Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





JESUS FLORES,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00265-CR



Appeal from


 346th District Court


of El Paso County, Texas


(TC # 20040D02068)




O P I N I O N



 Jesus Flores appeals his convictions of possession of heroin (Count 1) and tampering with
evidence (Count 2). A jury found Appellant guilty and the trial court assessed punishment at
imprisonment for a term of twelve and one-half years on Count 2 and confinement in the state jail
facility for one year on Count 1. We modify the judgment and affirm as modified.

FACTUAL SUMMARY


 Officer Jose Louis Lopez of the El Paso Police Department is assigned to the Tactical Unit
which addresses crime trends, including property crimes. On April 5, 2004, the Tactical Unit was
concentrating its efforts on a large shopping complex in East El Paso because there had been an
increase in vehicle thefts and burglaries in the parking lots. At approximately 6:15 p.m., Lopez was
in plain clothes sitting in an unmarked unit in the parking lot of Circuit City. Lopez saw Appellant
drive a white Chevy Tahoe into the parking lot and circle around the lot twice before finally parking
one space away from Lopez's vehicle. Appellant and a passenger remained seated in the vehicle
while the passenger talked on a cell phone. As the passenger talked, he looked at Lopez several
times. Finally, both men exited but rather than walking towards the store, the passenger walked
towards Lopez's vehicle and looked inside. Lopez had to quickly cover up his radio and binoculars
so the passenger could not see them. The passenger then turned around and both men walked into
Circuit City. After a few minutes, a white Avalanche drove into the parking lot. Lopez's attention
was initially drawn to the Avalanche because there had been an increase in thefts of that type of
vehicle recently. After driving around the lot a couple of times, the Avalanche parked directly in
front of Lopez. The driver sat in the vehicle and looked around as if he were trying to find someone. 
He made a few phone calls before getting out of the vehicle and walking into Circuit City. After a
few minutes, Lopez saw the same three men walking back to the Avalanche. They got in the vehicle
and drove away, leaving the Tahoe in the parking lot. Appellant was in the back passenger seat. 
Lopez was suspicious of this behavior because he knew that auto thieves often leave a stolen vehicle
in a parking lot and return to pick it up later. He also suspected that the Avalanche was stolen
because it did not have any license plates or dealer tags. Consequently, he notified other Tactical
Unit team members in the area what he had observed and asked them to follow the Avalanche. 

 Officer Robert Aguirre, another Tactical Unit member, arrived in the Circuit City lot and
walked over to the Tahoe. He looked inside and saw what appeared to be bundles of marihuana
partially covered with a blanket. Aguirre's conclusion was based on his knowledge and familiarity
with the manner in which large amounts of marihuana are commonly packaged. He advised Lopez
and the other Tactical Team members by radio that the Tahoe appeared to be loaded with narcotics
and he ordered everyone to stay away from the vehicle. Aguirre also told the officers following the
Avalanche to stop it based on the suspected narcotics in the Tahoe. He and Lopez waited about
fifteen minutes to see if anyone would arrive to pick up the Tahoe. When no one arrived, Lopez
requested a K-9 unit. Martin Moncada and K-9 "Alan" arrived and Moncada parked approximately
four car spaces away from the Tahoe. Upon exiting the vehicle, Alan literally dragged Moncada over
to the Tahoe and immediately gave a narcotics alert. The Tahoe was then towed away. 

 Officer Enrique Medina of the Tactical Unit was one of the officers who followed the
Avalanche after it left the Circuit City parking lot. While following the vehicle, Medina and the
other officers were informed by radio that the Tahoe contained "suspected narcotics"and they were
told to stop the Avalanche. Medina was trying to get a marked patrol unit to stop the vehicle, but
as the Avalanche approached the Zaragoza bridge between the United States and Mexico, he knew
it was unlikely they could get a marked unit to the scene in time to make the stop. Instead, he
decided that the Tactical Team would make the stop themselves. As they approached the bridge, the
Avalanche made a U-turn under Loop 375 and stopped at a telephone booth. They were
approximately 1/8 of a mile from the border. Medina exited his vehicle and began approaching the
Avalanche. Appellant exited and began walking towards the border. The driver and the other
passenger remained in the Avalanche. Medina, who had his badge on his pocket, identified himself
as a police officer and ordered Appellant to stop. Appellant, who appeared startled, turned around
and quickly raised his hands but then began backing away from Medina. Concerned about
Appellant's intentions, Medina grabbed Appellant by the arms and Appellant kept his hands
clenched at his chest. Medina took Appellant to the ground on his stomach and Appellant continued
to keep his hands beneath his chest and out of Medina's view. He also passively resisted by not
cooperating with Medina's commands. These actions further alarmed Medina because he did not
know whether Appellant was reaching for a weapon. Medina pulled Appellant's hands behind his
back and handcuffed him. Medina did a quick pat-down for weapons and rolled Appellant onto his
back. He then saw two syringes on the ground where Appellant had been lying. Medina moved the
syringes to the side but his attention was momentarily diverted because the other officers were
having difficulty detaining the driver and the other passenger who were physically resisting. The
officers succeeded in detaining the other suspects and Medina turned his attention back to Appellant. 
When he turned around, he saw that Appellant had picked up one of the syringes and was squirting
the liquid contents onto the ground. Medina recovered the syringes and saw that some of the
substance remained in one of the syringes. The substance in the syringe tested positive for heroin.

 Appellant filed a motion to suppress which was denied by the trial court prior to trial. After
a jury found Appellant guilty of both counts, Appellant and the State reached an agreement regarding
the punishment to be imposed on each count. In exchange for Appellant's plea of true to one
enhancement paragraph, the State would dismiss a pending unauthorized use of a motor vehicle
charge and would recommend imprisonment for twelve and one-half years on the tampering with
evidence count and confinement for one year in the state jail facility on the possession of heroin
count with the sentences to run concurrently. As agreed, Appellant entered a plea of true to the
enhancement paragraph and the State met its part of the plea bargain. (1) Appellant also waived his
right to appeal. The trial court followed the plea bargain in all respects. The trial court's judgment
erroneously reflects that Appellant entered a guilty plea before the jury. (2) We modify the judgment
to reflect that Appellant entered a plea of not guilty and was found guilty of each count by the jury. 
Appellant filed a notice of appeal and the trial court certified that he had a right of appeal because
the court had granted permission. 

MOTION TO SUPPRESS


 In Issues One and Two, Appellant contends that the trial court erred by denying his motion
to suppress the evidence in violation of the Fourth Amendment and Article I, Section 9 of the Texas
Constitution. We conclude Appellant has waived these issues for review.

 Appellant's motion to suppress asserted that he was arrested without lawful warrant and
without probable cause, and therefore, any evidence seized as the result of his arrest should be
suppressed. At the beginning of the suppression hearing, Appellant's counsel stated that they were
challenging the initial warrantless search of the Tahoe. When the State began to go into the
circumstances of Appellant's detention by Medina, the trial court asked whether it was necessary for
the State to continue with the testimony. The following exchange then occurred:

 [The prosecutor]: Judge, there's some evidence or some testimony that heroin was
found on the defendant. And his motion to suppress, I assume, is going to encompass
the heroin as well. Unless he'll stipulate that that was lawful, I was just laying the
predicate for the heroin.


 [Defense counsel]: We're moving to suppress the syringes and the heroin because
the initial search, we're alleging, was illegal. It all stems from the original search.


 [The prosecutor]: That's going to be our argument.


 [Defense counsel]: Yeah, we'll argue that during the seizure of the vehicle -- we're
not moving to suppress based on Officer Medina's arrest or pat down or
something was somehow unlawful, we're saying that back at the origin, the
parking lot search that's what we're challenging. [Emphasis added.]


. . .



 [The prosecutor]: We'll make it brief then, Judge. 


Based on this representation, the State tailored its evidence to only address the complaint made by
Appellant about the warrantless search of the Tahoe. At the conclusion of the hearing, defense
counsel restricted his arguments to the warrantless search of the Tahoe and made no complaint about
Medina's detention of Appellant. The trial court denied the motion to suppress. Appellant later re-filed the same motion to suppress but the record does not reflect that another hearing took place or
that the court ruled upon it. During trial on the merits, Appellant did not raise any objections
regarding his alleged unlawful custodial arrest by Medina.

 In order to present a complaint for appellate review, the record must show that the complaint
was made to the trial court by a timely and specific request, objection, or motion, and that the trial
court ruled on the request, objection, or motion. Tex.R.App.P. 33.1; Wilson v. State, 71 S.W.3d 346,
349 (Tex.Crim.App. 2002). Further, the error alleged on appeal must correspond to the objection
made at trial. Id. An objection stating one legal theory may not be used to support a different legal
theory on appeal. Broxton v. State, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995); Rezac v. State, 782
S.W.2d 869, 870 (Tex.Crim.App. 1990). Ordinarily, when the court hears objections to evidence
outside of the presence of the jury and rules that the evidence is admissible, those objections are
deemed to apply to the evidence when it is admitted before the jury without the necessity of
repeating those objections. See Tex.R.Evid. 103(a)(1). Although Appellant's motion to suppress
raises an issue regarding his arrest, Appellant expressly informed the trial court at the hearing on the
motion to suppress that he was not making any complaint about Officer Medina's arrest or pat-down. 
Thus, Appellant effectively withdrew or waived the issue set forth in his motion to suppress
regarding his alleged arrest without probable cause. Under these circumstances, the trial court was
not given an opportunity to rule on the issue and the court's denial of Appellant's motion to suppress
does not constitute a ruling on the legality of Officer's Medina's detention or arrest of Appellant. 
While Appellant re-filed his motion to suppress prior to trial, the record does not show that he
obtained a ruling on it. Furthermore, he did not object to the admissibility of any evidence
introduced at trial on the grounds urged on appeal. 

 At oral argument, Appellant took the position that the State, by not raising the waiver
argument in its brief, had waived the preservation issue by procedural default. At our request, both
parties have filed post-submission briefs addressing the issue.

 The Rules of Appellate Procedure place the burden squarely on the shoulders of the party
raising an issue on appeal to preserve the error by bringing the error to the attention of the trial court
and obtaining an adverse ruling. See Tex.R.App.P. 33.1. We can find nothing in the Rules of
Appellate Procedure to indicate that this burden to preserve error in the trial court is relieved by the
opposing party's failure to raise waiver in its brief before the intermediate appellate court.

 Appellant relies primarily on Tallant v. State, 742 S.W.2d 292 (Tex.Crim.App. 1987) and
Rochelle v. State, 791 S.W.2d 121, 124-25 (Tex.Crim.App. 1990) to support of his argument. In
Tallant, the Dallas Court of Appeals held that the trial court erred in admitting evidence that had
been seized pursuant to a defective search warrant. Tallant, 742 S.W.2d at 293. The State sought
discretionary review, alleging that the validity of the search warrant has not been preserved for
appellate review. Id. The Court of Criminal Appeals refused discretionary review because the State
had not raised the waiver issue in its brief or in a motion for rehearing. Id. at 293-95 (noting that the
rules governing petitions for discretionary review did not authorize review of claims which have not
been presented in an orderly fashion and determined by the appropriate court of appeals). Similarly,
in Rochelle, the Court held that the State did not preserve the issue whether the defendant
procedurally defaulted on his claim by not raising that issue in the court of appeals. Rochelle, 791
S.W.2d at 124-25. However, the Court of Criminal Appeals has subsequently limited Tallant,
stating that it that did not "mean to say in Tallant that an appellate court is prohibited from holding
that points of error were procedurally defaulted at trial whenever an appellee fails to claim as much
in his reply brief." Fuller v. State, 829 S.W.2d 191, 199 n.4 (Tex.Crim.App. 1992), overruled on
other grounds by Castillo v. State, 913 S.W.2d 529 (Tex.Crim.App. 1995). The Court referenced
the common practice of Texas appellate courts to examine preservation of error whether raised by
the parties or not. Fuller, 829 S.W.2d at 199 n.4. The Court of Criminal Appeals has since held that
preservation of error is a systemic requirement that a first-level appellate court should ordinarily
review on its own motion regardless of whether the issue is raised by the parties. Haley v. State, 173
S.W.3d 510, 515 (Tex.Crim.App. 2005); Jones v. State, 942 S.W.2d 1, 2 n.1 (Tex.Crim.App. 1997);
see Hughes v. State, 878 S.W.2d 142, 151 (Tex.Crim.App. 1992)(op. on reh'g)(holding that where
an appellate court fails to address systemic requirements on original submission such as issue of
whether error has been preserved or forfeited by the parties, the parties may call to the court's
attention such failure in a motion for rehearing). We hold that the State's failure to raise the waiver
argument in its brief does not relieve Appellant of his burden to preserve error in the trial court nor
does it preclude our review of the issue. Furthermore, the State has raised the issue of waiver in its
post-submission brief. Accordingly, we conclude Appellant failed to preserve the issues raised on
appeal. Issues One and Two are overruled. The judgment of the trial court, as modified, is affirmed.



August 16, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment


(Do Not Publish)

1. During the plea proceeding, Appellant entered a plea of guilty to each of the charged offenses even though
the jury had already found him guilty. The trial court, however, was required to enter the verdicts previously returned
by the jury. See Tex.Code Crim.Proc.Ann. art. 37.04 (Vernon 2006).
2. The trial court entered two judgments. The first reflected that Appellant waived his right to a jury trial and
entered a negotiated plea of guilty. The second judgment showed that Appellant entered a plea of guilty before the jury
and the court assessed punishment. Neither judgment accurately relates the nature of the proceedings below.