AFFIRMED and Opinion Filed February 26, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-01270-CR

ADRIAN QUEZADA JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause No. F09-30155-J

## OPINION

Before Justices Lang-Miers, Myers, and Richter[1]
Opinion by Justice Lang-Miers

Adrian Quezada Jr. pleaded guilty to manslaughter with a deadly weapon, a motor vehicle. The trial court found appellant guilty of manslaughter with a deadly weapon, not a firearm, and assessed punishment at ten years' confinement and a $2,000 fine. In his sole issue on appeal, appellant argues that the trial court abused its discretion by permitting a lay witness to give scientific expert testimony to prove extraneous bad acts during the punishment phase of trial. Finding no reversible error, we affirm the trial court's judgment.

---

[1] The Honorable Martin E. Richter, Retired Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## BACKGROUND

Appellant drove while intoxicated and killed Robert Joslin when he hit the vehicle Joslin was driving. Accident reconstructionist and Grand Prairie police officer Crystal Ziegler testified that appellant was driving an Expedition at a speed of 87 miles per hour when he approached a red traffic light at which the vehicle driven by Joslin, a 17-year-old high school senior, was stopped behind an SUV. Joslin's vehicle was sandwiched between appellant's Expedition and the SUV. The force of the impact jammed the rear of Joslin's vehicle into the front seat and caused the SUV to go through the intersection and come to a stop on the other side. Joslin, his passenger, and appellant were taken to the hospital. Joslin died from his injuries. Appellant's toxicology report showed a blood alcohol concentration level of .20.

At the suggestion of his attorney, appellant voluntarily wore a Secure Continuous Remote Alcohol Monitor (SCRAM) device or "bracelet" around his ankle to monitor his alcohol consumption while on pretrial release. At some point, the court held appellant's bond insufficient and he was arrested pending trial. Appellant waived a jury and pleaded guilty to the court under the condition that he would not seek probation.

During the sentencing hearing, the State called Vickers Cunningham, former Dallas criminal district court judge and Chief Operating Officer of Recovery Healthcare Corp., the company that provided and monitored appellant's SCRAM device. Cunningham testified that Recovery Healthcare "monitors the tracking and treatment and education of criminal justice offenders in Texas, Oklahoma, and Louisiana." He testified that the SCRAM device "is a fuel cell that takes a sample every 30 minutes sampling the individual's insensible perspiration." He explained that if the device detects "transdermal alcohol," it sends a report through the internet to the company's offices where it alerts "a human to look at the data and determine whether or not

2

an individual has been consuming alcohol or tampering with the device." He testified that in the previous year his company monitored 4700 individuals, and the SCRAM technology performed over 27 million alcohol tests.

Following this testimony by Cunningham, appellant objected and questioned the witness on voir dire about his qualifications to give scientific opinions about the SCRAM device. After the voir dire examination, the trial court did not qualify Cunningham as an expert witness, but did allow Cunningham to testify as the company's custodian of records. The State then offered into evidence an exhibit containing multiple pages of data from appellant's SCRAM device. Defense counsel objected to the admission of the exhibit arguing that the State had "not laid the proper predicate for the introduction of" the exhibit. The trial court admitted the exhibit.

The State asked Cunningham whether he was able to determine that appellant consumed alcohol while he was wearing the SCRAM device. Defense counsel objected arguing that the proper foundation was not established for Cunningham to answer the question. The trial court instructed the State to rephrase "keeping in mind that this witness has been qualified only as a custodian of records." The State then asked Cunningham whether, "[b]ased on the report," he was "able to determine, based on the records, if [appellant] consumed alcohol." Defense counsel did not object. Cunningham testified that the records showed "a tampering event, and I need to explain tampering." As he began to explain that "[t]he device has an internal infrared device that sends out a signal of light," defense counsel objected that Cunningham was testifying as an expert. The trial court overruled the objection "as to that question." Cunningham then gave a lengthy explanation about appellant's "baseline" reading, what happens when "something is placed between [the device] and the individual's skin" and "causes the IR, infrared, to go out of compliance," and how certain data in the records of appellant's SCRAM device showed "a major

3

disruption in the IR sequence." He stated that the records showed "a confirmed obstruction" on certain dates. The trial court interrupted Cunningham and told the State to "[a]sk your next question." The State asked whether Cunningham was "able to determine in April, April 30th through May 1st, that [appellant] had, in fact, a confirmed tamper with the bracelet?" Defense counsel did not object. The State asked whether there were any other confirmed tampers, and Cunningham answered, all without objection.

The State asked Cunningham to explain the meaning of "transdermal alcohol." Defense counsel did not object. Cunningham testified that when an individual consumes alcohol he eliminates approximately 1% through his skin. He said, "The fuel cell [in the SCRAM device] is a very sensitive device and is able to detect very low levels transdermally, so it is actually smelling or detecting alcohol being eliminated through the skin." He said a notation of "confirmed tampering" means the "tampering was in place for more than eight hours." Referring to the records from appellant's SCRAM device, Cunningham testified that the data showed that appellant had at least six confirmed tampering events and a confirmed consumption event during a two-month period. Appellant wore the device for over a year. All of this testimony came in without objection.

The State also presented evidence about how the accident happened and appellant's prior dealings with law enforcement. The defense called character witnesses. Following the presentation of evidence, the trial court assessed appellant's sentence at ten years' confinement and a $2,000 fine.

## DISCUSSION

In his sole issue on appeal, appellant argues that the trial court abused its discretion by permitting Cunningham to give expert, scientific testimony about the SCRAM device to prove

4

that appellant consumed alcohol while awaiting trial. He argues that the error affected his substantial rights to a fair punishment hearing because the testimony undercut his theory that he was remorseful and accepted responsibility.

Evidence of extraneous bad acts is admissible during the punishment phase of trial if the trial court deems the evidence relevant to sentencing. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2012). The State "may offer evidence of any extraneous crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible." *Haley v. State*, 173 S.W.3d 510, 514 (Tex. Crim. App. 2005). Because the question in the punishment phase is not whether the defendant committed a crime, but rather what sentence should be assessed, "the punishment phase requires the [fact-finder] only find that these prior acts are attributable to the defendant beyond a reasonable doubt." *Id.* at 515.

We review a trial court's decision to admit extraneous offense evidence for an abuse of discretion. *See id.* at 513–15. If we conclude that the admission of the evidence was error, we will not reverse unless it affected appellant's substantial rights to a fair sentencing trial. *See Coble v. State*, 330 S.W.3d 253, 380 (Tex. Crim. App. 2010). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the [fact-finder]'s verdict." *Id.* In making this determination, we review the entire record. *Id.*

Appellant initially argues that the court's ruling that Cunningham could testify as the custodian of records of Recovery Healthcare "only addressed the admissibility of the monitoring report." We disagree. Appellant objected to Cunningham's qualifications to give scientific opinions about the SCRAM device, and it was after that objection that the court ruled that Cunningham could testify as the custodian of records. Appellant did not argue that

Cunningham's testimony should be limited to admission of the monitoring report. And when the State later offered the monitoring report into evidence through Cunningham, appellant objected only on the grounds that the State had not laid the proper predicate. Appellant never sought a ruling restricting Cunningham's testimony solely to the admission of the monitoring report, and we do not construe the trial court's ruling to so restrict his testimony.

Appellant also contends that, despite the limitation on Cunningham's testimony, he gave expert, scientific opinions about how the SCRAM device worked and that appellant tampered with the device. Appellant cites Cunningham's testimony about the device's "fuel cell"; "transdermal alcohol"; "the IR scheme"; and causes of disruptions to the device's monitoring ability. He argues that without Cunningham's explanations, the State did not prove beyond a reasonable doubt that appellant tampered with the device or consumed alcohol pending trial. And he argues that without this testimony the argument for "such a stiff punishment for a first-time offender is less persuasive."

Because the trial court allowed Cunningham to testify as the custodian of records, and appellant did not object to that ruling, it was incumbent upon appellant to object when he believed the State's questions went beyond the testimony of a custodian of records. *See* TEX. R. APP. P. 33.1; *see also Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (appellant must object each time inadmissible evidence is offered); *Leday v. State*, 983 S.W.2d 713, 717–18 (Tex. Crim. App. 1998) (same). But appellant did not object each time the State's questions veered into the domain of an expert, and he did not object to the specific testimony he complains about on appeal. In fact, without objection, Cunningham explained the meaning of "transdermal alcohol." Referring to the SCRAM reports, Cunningham also testified, without objection, about confirmed tampers on April 4–5, April 30 through May 1, May 7–12, May 12–19, May 21–24,

6

and May 30 through June 1; and he explained that a notation of "confirmed tampering" meant the "tampering was in place for more than eight hours." He testified that the monitoring data showed appellant had at least six confirmed tampering events and a confirmed consumption event during a two-month period. We conclude that appellant did not preserve his complaints for our review because he did not object to the testimony about which he complains on appeal.

But even if the trial court abused its discretion by allowing Cunningham to testify, we conclude that the error did not affect appellant's substantial rights to a fair sentencing trial.

The record does not show affirmatively that the trial court considered Cunningham's testimony about how the SCRAM device works. *See Lockett v. State*, 16 S.W.3d 504, 505–06 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). And the SCRAM monitoring report introduced into evidence through Cunningham as the custodian of records contained various entries stating, "Confirmed tamper," with a specific date and time, and "Confirmed tamper . . . Client is showing a pattern of non-compliance"; notations stating, "Client missed scheduled communication time"; "Alert has been determined to be a confirmed violation"; "Bracelet has not communicated with Modem for 24 hours"; "Bracelet and Modem Communication Interruption"; and "No Readings from Bracelet for an Extended Period of Time." The records showed that after an alert of "potential consumption," the company called appellant about the alert and "he said he can't drink" but that "he was 'with' his girlfriend." The records also showed that appellant was advised that his bracelet was too loose, but he said he did not want it tightened and to leave it the way it was. Entries for May 4, 2010, stated "Confirmed consumption with obstruction" and "Alcohol is detected[.]"

Other evidence offered during the sentencing hearing showed that appellant was underage at the time of the accident and that he had been drinking because of a fight with his

girlfriend, his child's mother, and because somebody in a white car had sideswiped his truck and did not stop. He went to see a friend to talk and carried a 12-pack of beer with him. Then he refused his friend's offer to stay there instead of driving.

The evidence showed that appellant compared this accident to one in Tarrant County where the defendant was sentenced to four years and appellant said he did not believe he "should even do two years" because it was an accident, he "only killed one person," and his case "ain't as bad as the [Tarrant County] case." The evidence showed that appellant had been arrested or ticketed several times relating to underage alcohol or marijuana possession in the four years prior to this accident; he smoked marijuana about four times a week from the ages of 14 to 17; he used cocaine at age 18; and he skipped school and failed most of his classes. Appellant admitted that he lied to the doctor who conducted his psychological evaluation, and the evidence showed that appellant had discussed getting a tattoo in jail of the Texas Rangers when the sentencing hearing was over and that he planned to fight his cell mate after the sentencing hearing because his cell mate "keeps pushing me and I hide, you know, but I can't hide for long . . . ."

Finally, the punishment range in this second-degree felony case was from two years to twenty years and a fine up to $10,000. The trial court assessed appellant's punishment at ten years, in the middle of the range, and a $2,000 fine.

We resolve appellant's sole issue against him.


ELIZABETH LANG-MIERS
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

111270F.U05

8



# Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

ADRIAN QUEZADA JR., Appellant

No. 05-11-01270-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F09-30155-J.
Opinion delivered by Justice Lang-Miers,
Justices Myers and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 26th day of February, 2013.


ELIZABETH LANG-MIERS
JUSTICE