**Kimberly HALEY, Appellant**

v.

**The STATE of Texas.**

No. PD–1531–03.

Court of Criminal Appeals of Texas.

Oct. 5, 2005.

Terrence W. Kirk, Austin, TX, for Appellant.

Sally E. Swanson, Asst. District Atty., Matthew Paul, State's Atty., Austin, TX, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

In the punishment phase of Kimberly Haley's cocaine possession trial, the State introduced evidence of Haley's participation in an extraneous murder offense and testimony of the murder victim's mother. Holding the evidence "insufficient" to find Haley guilty beyond a reasonable doubt of the murder, the Court of Appeals found error. The court also found error in the admission of the mother's testimony. We find error only in admitting the victim's mother's testimony and affirm the court's judgment.

## I. Facts

Kimberly Haley was charged by indictment with the offense of possession of a controlled substance with intent to deliver cocaine in the amount of four grams or

more but less than 200 grams. Haley was tried in a joint trial with co-defendant Kristofer Marsh, who faced the same indicted offense after being previously convicted of the unrelated murder of Michael Adelman. After the jury found Haley guilty as charged in the indictment, the State introduced punishment evidence describing Haley's involvement in Adelman's murder. Because this appeal centers on the admission of this evidence, a brief summary of the admitted testimony is appropriate. Testimony in the punishment phase revealed the following:

On October 5, 2000, Haley and her friend Ronnie Maxwell were drinking and dancing at a club located in downtown Austin. While they were dancing, Michael Adelman approached and proceeded to dance with them. Haley was offended by Adelman's persistent touching while they danced, and proceeded to call her boyfriend, co-defendant Kristopher Marsh, to tell him about the incident. After Marsh arrived at the club, Haley grabbed Adelman's nipple as he walked by and stated "We are going to start some s—t." Adelman laughed and pushed Haley's hand away.

When Adelman and his friends left the bar, Haley, Marsh, and Maxwell followed Adelman in Marsh's vehicle. They followed the vehicle until it stopped at Adelman's apartment complex. Armed with a bat, Marsh quickly exited his vehicle and ran towards Adelman. Haley immediately moved to the driver's seat, turned the lights off, and reversed the vehicle. Marsh approached from behind as Adelman was directing a friend into a parking space and struck him several times with a bat. Marsh also struck the driver's side window where Adelman's friend was sit-

ting, shattering the glass throughout the car. Haley quickly drove towards Marsh, who jumped into the car, and sped away. In the car after the attack, Marsh laughed as he told them that "[t]here is no way he is getting up" after he "kept hitting him and hitting him." Haley kissed and praised Marsh by saying, "You finally did it." After five days in intensive care, Michael Adelman was pronounced brain dead. Adelman's mother, Arleen Adelman testified to her family's suffering, Michael's treatment, and the family's decision to donate his organs.

Upon the close of evidence, the trial court charged the jury on extraneous offense and bad acts evidence. The charge stated that the jury "cannot consider such acts or transactions, if any, unless you first find and believe beyond a reasonable doubt that the defendant committed such acts or participated in such transactions. . . ." The instructions did not contain a charge on the law of parties. The jury assessed both defendants' punishment at confinement for sixty-five years.

## II. Court of Appeals

After reviewing the State's punishment evidence, the Court of Appeals held that "[t]he evidence shows that appellant's co-defendant Marsh murdered Michael Adelman; appellant could only be criminally responsible for Adelman's murder if the evidence showed beyond a reasonable doubt her guilt as a party to that offense." [1] Concluding the evidence was insufficient to prove Haley's guilt as a party beyond a reasonable doubt, the court found the trial court abused its discretion in admitting this punishment evidence.[2]

The Court of Appeals also found error in the trial court's failure to include a defini-

---

1. *Haley v. State,* 113 S.W.3d 801, 813 (Tex. App.-Austin 2003).

2. *Id.*

tion of the law of parties in its charge to the jury.[3] The court held that the jury must first find Haley guilty beyond a reasonable doubt of committing Adelman's murder as a party before it could give any consideration to this evidence in assessing Haley's punishment.[4] Therefore, the court reasoned, without a law-of-parties definition, the trial court condoned the jury's use of this punishment evidence without a key component necessary in finding criminal liability.[5] The court went on to say that contrary to Texas Penal Code section 7.02 and this state's precedent on criminal party liability, the instruction permitted the jury to

> believe[ ] that appellant's presence at the scene of the crime and fleeing from the scene with Marsh was sufficient "participation" in the offense for the jury to consider the evidence in assessing appellant's punishment. Appellant's presence at the scene and flight therefrom with Marsh would not be sufficient to make appellant a party to the offense. [6]

The court then conducted an egregious-harm analysis where it found this error deprived Haley of a fair and impartial trial.[7] The court held the error in submitting evidence of the Adelman murder and the error in the jury instructions entitled Haley to a new punishment trial.

Additionally, the court found error in the admission of victim-impact testimony proffered by Arleen Adelman.[8] Relying on this Court's opinion in *Cantu v. State*,[9]

the court held it was error to admit victim-impact evidence relating to the extraneous offense of murder because Haley was charged only with possession of cocaine and the indictment did not contain a named victim.[10] After reviewing the State's closing arguments and the record as a whole, the court concluded that the arguments "stressed and overemphasized" this evidence in justifying a severe punishment which substantially affected and influenced the jury's punishment assessment.[11] We granted the State's petition for discretionary review in light of these holdings.

## III. Analysis

### A. Evidence Admissibility

Texas Code of Criminal Procedure article 37.07 § 3(a) is one of the guiding principles governing the admissibility of evidence at the punishment phase of a trial.[12] Article 37.07 § 3(a) states in relevant part:

> [E]vidence may be offered by the state and the defendant as to any matters the court deems relevant to sentencing including but not limited to ... evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or

3. *Id.* at 814.
4. *Id.*
5. *Id.*
6. *Id.*
7. *Id.* at 815.
8. *Id.* at 818.

9. *Cantu v. State*, 939 S.W.2d 627 (Tex.Crim. App.1997).
10. *Haley*, 113 S.W.3d at 818.
11. *Id.* at 819.
12. *Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim.App.2002).

act.[13]

The State argues that the Court of Appeals erred in finding error in admitting this evidence by failing to review this evidence under a "bad act" theory of admissibility. Haley responds to the State's ground of review by contending this theory of admissibility was never presented to the Court of Appeals, and therefore is not properly before this Court. While the State never expressly advanced the bad act theory in its brief before the lower court and a detailed analysis is not found in its decision, the Court of Appeals nevertheless implicitly decided this issue in its resolution of this case.[14] By holding that the only way the jury could consider this evidence under article 37.07 in assessing punishment was to first find Haley guilty beyond reasonable doubt for Adelman's murder, the Court of Appeals rejected the argument that this evidence could be admissible as a bad act.[15] Therefore, this implicit holding is a decision of the Court of Appeals and the State's argument warrants review.

The Court of Appeals held that the evidence is insufficient to prove beyond a reasonable doubt that Haley was guilty as a party to the offense of Adelman's murder; therefore the trial court abused its discretion in admitting and permitting the jury to consider this evidence in assessing Haley's punishment. The Court of Appeals misreads article 37.07 § 3(a). And

as a result, the court mis-characterizes the purpose of character evidence.

 When determining the admissibility of evidence under article 37.07, a court must be guided by the language of its provisions.[16] We look solely to the statute's plain language for its meaning unless its text is ambiguous or the application of its plain language would lead to an absurd result that the Legislature could not have possibly intended.[17] Article 37.07 § 3(a)' s language cannot be labeled ambiguous, nor does the plain-language application lead to absurd results unintended by the Legislature.

 We have held this provision's unambiguous wording to mean, for purposes of assessing punishment, that the prosecution may offer evidence of any extraneous crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed by the defendant or (2) an act for which he could be held criminally responsible.[18] For purposes of this case, several principles are apparent from article 37.07 § 3(a)'s text. First, § 3(a) does not contemplate any significant distinction between the terms "bad act" or "extraneous offense." The statute expressly states "evidence of an extraneous crime or bad act . . . to have been committed by the defendant or for which he could be held criminally responsible."[19] Under this statute, it is irrelevant whether the conduct the offering party is attempting to prove is, or can be characterized, as an

---

**13.** TEX.CRIM. PROC.CODE ANN. art. 37.07 § 3(a) (Vernon 2004).

**14.** *See Crittenden v. State*, 899 S.W.2d 668, 670 n. 2 (Tex.Crim.App.1995); *Lee v. State*, 791 S.W.2d 141, 142 (Tex.Crim.App.1990).

**15.** *See Lee*, 791 S.W.2d at 142.

**16.** *Jaubert v. State*, 74 S.W.3d 1, 2 (Tex.Crim. App.2002); *see Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

**17.** *Id.*

**18.** *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim.App.1999).

**19.** TEX.CRIM. PROC.CODE ANN. art. 37.07 § 3(a) (Vernon 2004).

offense under the Texas Penal Code. The inclusion of acts rising to the level of criminal responsibility and acts appropriately labeled "bad" in the statute's language make it clear that the act's nomenclature does not place each on a separate path towards admissibility.

■ Second, the statutorily imposed burden of proof beyond a reasonable doubt does not require the offering party to necessarily prove that the act was a criminal act or that the defendant committed a crime. Before the jury can consider this evidence in assessing punishment, it must be satisfied beyond a reasonable doubt that the acts are attributable to the defendant.[20] We interpret the statute to require the burden of proof to be applied to a defendant's involvement in the act itself, instead of the elements of a crime necessary for a finding of guilt.[21]

■ Third, the statute's plain language is in harmony with the nature and general characteristics of punishment evidence. By holding that a jury must find Haley guilty of murder as a party to the offense, the Court of Appeals equates the role of punishment evidence with evidence proffered in the guilt-innocence phase. Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed.[22] Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only find that these prior

acts are attributable to the defendant beyond a reasonable doubt.[23]

Therefore, we conclude the Court of Appeals erred in holding (1) that the evidence must first show that Haley is guilty of murder in connection with Adelman's death and (2) that Haley's guilt must be shown beyond a reasonable doubt. Because we have held that the Court of Appeals applied an incorrect theory of law, we need not address the State's related points of error concerning whether the trial court must include the law of parties in the jury instructions sua sponte or whether the Court of Appeals applied the proper harm analysis.

### B. Victim Impact Testimony

#### Preservation of Error

■ Before we address the merits of the Court of Appeals's holding on finding error in the introduction of Adelman's testimony, we must address the State's contention that the lower court erred in addressing this issue when it was not properly preserved for review. Because we have held that preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties, our inquiry into whether Haley properly preserved this alleged error is appropriate.[24]

After the State elicited Adelman's name, her occupation, her son's name, age and occupation, the following bench conference took place:

20. *Huizar v. State,* 12 S.W.3d 479, 482–83 (Tex.Crim.App.2000); *Fields,* 1 S.W.3d at 688; *see id.*

21. *See id.*

22. *Sunbury v. State,* 88 S.W.3d 229, 234 (Tex.Crim.App.2002); *Rogers v. State,* 991 S.W.2d 263, 265 (Tex.Crim.App.1999).

23. *Fields,* 1 S.W.3d at 688.

24. *See Martinez v. State,* 22 S.W.3d 504, 507 (Tex.Crim.App.2000) (citing *Hughes v. State,* 878 S.W.2d 142, 151 (Tex.Crim.App.1992) (op. on reh'g)).

MR. FLOREY [Marsh's attorney]: We were told we weren't going to get into victim impact. I thought she was up here just to say that was her son.

MR. KEEL [Haley's attorney]: To identify him for 37.07. Where are we going with this?

THE COURT: Everything is proper. If you have an objection, just state it and I will rule.

MR. KEEL: I object that none of this is relevant for the record.

THE COURT: Overruled.

MR. FLOREY: Note my same objection.

THE COURT: Overrrruled.

MR. FLOREY: Ask for a 403 balancing.

THE COURT: Overruled.

At the conclusion of Adelman's testimony, the Court granted a short recess during which resulted in the following bench conference:

MR. KEEL: I just want to make the record clear that I had a clear understanding from the Court after I made my relevance objection as to that last witness that the Court would not entertain any further objections to that witness. I hope the Court will agree with me on that and the record will reflect that.

THE COURT: I didn't mind you objecting.

· · ·

MR. KEEL: I did. I made a relevance objection.

THE COURT: You did. I overruled it.

MR. KEEL: I want the record to reflect that the witness testified beyond what my understanding the Court would allow that particular witness to testify to, including inadmissible victim impact testimony concerning the homicide of Mike Adelman when we are in punishment phase of my defendant's narcotics case. Furthermore, the Court, it was my understanding, did not wish to entertain any further objections after the initial relevance objection. When the testimony began, it was not only irrelevant but interspersed with hearsay and frequently based upon graphic and prejudicial matters that were totally irrelevant and I object. I am asking the Court to instruct the jury to disregard those matters.

THE COURT: The instruction to disregard is denied. You join in that objection?

MR. FLOREY: I join in that and ask for your ruling.

THE COURT: Instruction to disregard is denied.

· · ·

MR. FLOREY: One other thing, your Honor. When we were up here before, did I understand and did we have a running objection to all of her testimony when we were here earlier on the bench?

THE COURT: You didn't because you didn't ask for it. I just said make your objection. I wanted y'all to object out there to whatever she said that was objectionable.

Preservation of error for appellate review under Texas Rule of Appellate Procedure 33 requires that the record demonstrate (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial judge either ruled on the request, objection, or motion, or he refused to rule and the complaining party objected to that refusal.[25] We have held that an objection must be timely, specific, pursued to an adverse ruling, and must be

---

**25.** Tex.R.App. Pro. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex.Crim.App.2003).

made each time inadmissible evidence is offered.[26] But two exceptions apply to the requirement of subsequent objections: counsel may obtain a running objection or request a hearing outside the presence of the jury.[27]

While it is clear from the record that Haley's counsel did not obtain a running objection, we find that the bench conference was a hearing outside the presence of the jury and satisfied Texas Rule of Evidence 103(a). Rule 103(a) provides, in part, "[w]hen the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections." Therefore, we find Haley properly preserved this alleged error in the trial court and the Court of Appeals was correct in addressing whether the trial court erred in admitting this testimony.

*Victim–Impact Admissibility*

In *Mosley v. State,* we discussed the meaning and distinctions between "victim-impact" and "victim-character" evidence.[28] Victim-impact evidence is evidence concerning the effect the victim's death will have on others, particularly the victim's family members; whereas victim-character evidence is defined as evidence concerning the good qualities of the victim.[29] A review of Adelman's testimony reveals both the victim-impact and victim-character nature of her testimony. On direct examination, Adelman testified to the emotional impact her son's hospitalization and subsequent death had on her family. She recalled her shock in seeing her son lying in the hospital bed "with many plugs and tubes and everything imaginable." Adelman further testified to her family's time spent bedside at the hospital:

> There were friends there all the time. We were only allowed to go in once every hour or set times that we could go in. We had to keep the activity down because it seemed like a lot of his friends would want to come in and talk to him and there was a lot of crying going on and we would watch the gauge and it would move his cranial pressure. So we were told to keep kind of quiet. But we were praying. We had priests there. We had a lot of people going in and out.

After detailing how the family was informed of Michael's worsening condition, Adelman spoke of the family's decision to donate her son's organs pursuant to his wishes. She indicated that "[i]t was a hard decision, but we knew that's what Mike would have done. Mike would have done anything for his friends or his family. He was that type of person."

■ Victim-impact evidence or testimony generally may be admissible at the punishment phase when that evidence has some bearing on the defendant's personal responsibility and moral culpability.[30] But the introduction of victim-impact evidence is limited even further when a party attempts to introduce this evidence concerning a victim of an extraneous offense and one not named in the indictment.

**26.** *Geuder,* 115 S.W.3d at 13; *Martinez v. State,* 98 S.W.3d 189, 193 (Tex.Crim.App. 2003).

**27.** *Id.*

**28.** 983 S.W.2d 249, 261 (Tex.Crim.App.1998).

**29.** *Id.; see also Mathis v. State,* 67 S.W.3d 918, 928 (Tex.Crim.App.2002).

**30.** *Salazar v. State,* 90 S.W.3d 330, 335 (Tex. Crim.App.2003).

Like the Court of Appeals, we find our opinion in *Cantu v. State*[31] instructive in the present case. In *Cantu v. State*, the appellant was charged with the offense of capital murder for killing a person in the course of committing or attempting to commit robbery, kidnapping, and aggravated sexual assault.[32] In the punishment phase, the State offered the testimony of the mother of another victim killed during the same episode that resulted in the death of the victim included in the indictment.[33] Over appellant's objection, the trial court permitted the mother to testify about her daughter's good character, the search for her daughter, and the impact her disappearance had on the rest of the family members. This Court held "[t]he danger of unfair prejudice to a defendant inherent in the introduction of 'victim impact' evidence with respect to a victim not named in the indictment on which he is being tried is unacceptably high."[34] While the *Cantu* Court noted that "[e]xtraneous victim impact evidence, if anything, is more prejudicial than the non-extraneous victim impact evidence found by this Court to be inadmissible in [previous cases]," the Court's central holding was that such evidence was irrelevant under Texas Rule of Evidence 401.[35] We hold similarly here.

■ The Court of Appeals correctly noted that Haley faced an indictment that did not identify a victim and charged only the offense of possession of cocaine with the intent to deliver. Adelman's testimony in the form of victim-impact and victim-character testimony regarding an extraneous offense or bad act was irrelevant under Rule 401 to the determination of the appropriate sentence Haley should receive on the facts of this case.[36] We agree with the lower court's holding that the trial court erred in admitting victim-impact evidence relating to the extraneous offense of murder in the punishment phase of Haley's cocaine possession trial.

■ We further agree with the Court of Appeals's analysis in finding that the erroneous introduction of Adelman's testimony had a substantial effect on the jury's verdict. Pursuant to Texas Rule of Appellate Procedure 44.2(b), any non-constitutional error that does not affect appellant's substantial rights must be disregarded.[37] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[38] In assessing the likelihood that the jury's decision was adversely affected by the error, an appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case.[39] The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing

---

31. 939 S.W.2d 627 (Tex.Crim.App.1997).

32. *Id.* at 630.

33. *Id.* at 636.

34. *Id.* at 637.

35. *Id.*

36. *See id.; see also Sunbury*, 88 S.W.3d at 234 (stating relevance should be a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case).

37. Tex.R.App. P. 44.2(b).

38. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997).

39. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim.App.2002).

arguments, voir dire and whether the State emphasized the error.[40]

After conducting our own review of the entire record, we conclude that the Court of Appeals correctly analyzed the alleged harm. The court's finding that the jury's verdict was substantially affected and influenced by the erroneously admitted evidence is both reasonable and supported by the record. We agree that the State's extended argument concerning the suffering Michael Adelman's family endured had a substantial effect and influence on the jury's punishment assessment. The record clearly shows that the Adelman family's pain was a prominent piece of the State's argument for a weighty sentence. In this case, we cannot relegate the pervasive and emotional characteristics of this impermissible testimony, especially the manner in which it was used, to the benign category of harmless error.

## IV. Conclusion

The Court of Appeals erred in finding error in the admission of evidence detailing Haley's involvement in the murder of Michael Adelman. However, we affirm the Court of Appeals's holding that the victim-impact testimony was improperly admitted and substantially affected the jury's verdict. Therefore, the Court of Appeals's remand to the trial court for a new trial on the punishment phase is affirmed.

KELLER, P.J., filed a concurring opinion.

MEYERS, J., did not participate.

KELLER, P.J., filed a concurring opinion.

Although I agree with the Court's disposition, I am not in complete accord with its reasoning. I discuss the points of departure below.

### 1. Extraneous Bad Acts Evidence

I agree that we are permitted to reach the merits of the State's argument, but I do so for a simpler reason: the party that prevailed at trial should never be required to advance an argument before the Court of Appeals as a predicate for raising that argument on discretionary review. This conclusion is consistent with the view that I articulated in *Alonzo v. State*[1] with regard to preservation of error. I would further conclude that the reasoning in my *Alonzo* opinion should apply also to all types of arguments that could be made by a party that prevailed at trial.

We should keep in mind that the trial on the merits is the "main event rather than a tryout on the road."[2] We should not allow this "main event" to be disturbed merely because the prevailing party neglected to articulate the correct basis for upholding the trial court's correct decision. To do so would be to impose preservation of error requirements upon the parties on appeal. But preservation requirements exist at trial because they promote the proper and efficient functioning of the system:

Stated more broadly, objections promote the prevention and correction of errors. When valid objections are timely made and sustained, the parties may have a lawful trial. They, and the judicial system, are not burdened by appeal and retrial. When a party is excused from

40. *Id.* at 355–56.

1. 158 S.W.3d 515 (Tex.Crim.App.2005)(Keller, P.J., dissenting to dismissal of petition).

2. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)(ellipsis and internal quotation marks omitted).

the requirement of objecting, the results are the opposite.[3]

Imposing such a requirement on the appellee at the appellate level, however, does nothing to promote the efficient functioning of the system at the trial level, where it matters the most. In fact, it would have just the opposite effect. And as I observed in *Alonzo*, the party that prevailed at trial has no duty to even file a brief on appeal.[4] It makes little sense, then, to require the party that prevailed at trial to articulate a particular argument on appeal before being permitted to raise the issue on discretionary review. So, with regard to whether we can address the State's "bad acts" argument here, I would simply conclude: because the State prevailed at trial, it had no duty to discuss the admissibility of the evidence as a bad act.

## 2. Extraneous Victim Impact Evidence

Although *Cantu v. State*, a capital case, suggested that victim impact evidence relating to the victim of an extraneous offense was not "relevant" under Rule 401,[5] that pronouncement is questionable in light of Rule 401 and of questionable application to this case in light of subsequent caselaw regarding non-capital cases. The threshold for relevance under Rule 401 is very low: "having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] Moreover, subsequent caselaw has indicated that the admissibility of evidence at the punishment phase of a non-capital case is a function of policy rather than relevance.[7] If we were to speak of relevance, this evidence seems relevant to the harm inflicted by the defendant,[8] and thus to his punishment, but only slightly so, due to the remoteness of its connection to the case. In part because of this remoteness, it is unfairly prejudicial. While grounding its legal basis on relevance, the *Cantu* opinion expressly articulated its view that this evidence was unfairly prejudicial,[9] and thus, the more logical basis for excluding the evidence would appear to be Rule 403.[10] As a matter of policy, I would not find the evidence to be completely unrelated to the question of the appropriate punishment, but I would find the link to be attenuated and the danger of unfair prejudice to be high enough that the evidence warrants exclusion. Consequently, instead of finding the evidence "irrelevant," I would hold that the minimal probativeness of this evidence was substantially outweighed by the danger of unfair prejudice under Rule 403.

---

**3.** *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim.App.2002).

**4.** *See* 158 S.W.3d at 516.

**5.** 939 S.W.2d 627, 637 (Tex.Crim.App.1996), *cert. denied*, 522 U.S. 994, 118 S.Ct. 557, 139 L.Ed.2d 399 (1997).

**6.** Tex.R. Evid. 401.

**7.** *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim.App.1999).

**8.** *See Mosley v. State*, 983 S.W.2d 249, 262 (Tex.Crim.App.1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

**9.** 939 S.W.2d at 637.

**10.** Tex.R. Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

With these comments, I concur in the Court's judgment.