COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





CASSANDRA JOYCE LEFFEW,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-06-00105-CR



Appeal from


 227th District Court


of Bexar County, Texas


(TC # 2004CR8386B)




O P I N I O N




 Cassandra Joyce Leffew appeals her conviction of aggravated kidnaping. The jury assessed
punishment at forty years' confinement in the Institutional Division of the Texas Department of
Criminal Justice and a $10,000 fine. We affirm the conviction, but reverse and remand for a new
punishment hearing.

FACTUAL SUMMARY


 Appellant resided with her husband Pablo, her friend Maria (whom she met at the Battered
Women's Shelter), Maria's boyfriend Robert Fernandez, and seven of their children. (1) On July 24,
2004, Maria and Robert took her children and Appellant's children to the swimming pool at
Appellant's friend's apartment complex. Appellant stayed at the apartment. When Robert brought
his son and Appellant's two-year old daughter back to the apartment, Appellant's daughter was
crying. 

 As Appellant was bathing her daughter, she noticed a red mark on her back. The next day,
Appellant noticed bruises on her daughter's back and showed them to Maria. Maria told her she
knew the mark was made by Robert's boot. According to Appellant, some of the other children had
told her that Robert hit them. Pablo was upset and attacked him. When Appellant's brother,
Thomas, tried to stop Pablo, he was hit in the eye.

 Appellant and Maria decided to take Robert to a ranch owned by an acquaintance named
Dolores. Wanting to find out if Robert had done anything else to her children, Appellant poured him
a large glass of rum and put 2 milligram capsules of Ativan into his drink. As Robert grew sleepy,
Appellant asked him what he had done to her daughter. Robert denied having done anything. 
Appellant then began to shake and slap him. In fact, she became sick because she was so upset. 
When Maria told her that Robert was waking up, Appellant said she had more Ativan in her purse. 
Maria gave Robert some other pills that Dolores had. Maria and Dolores then placed Robert into
the trunk of Appellant's vehicle. They took Appellant home because she was still feeling ill.

 Once at the house, Maria and Dolores asked Pablo to help them carry Robert out of the trunk. 
Pablo refused and told Appellant to go inside. Maria and Dolores then left with Robert still in the
trunk. Appellant stated, "I just wanted to beat him up and drop him off somewhere." The jury found
Appellant guilty of aggravated kidnaping and assessed punishment at forty years' confinement with
a $10,000 fine.

EVIDENTIARY ERROR


 Appellant brings two issues for review involving evidentiary error at the punishment phase.
First, she contends the trial court erred by admitting evidence of a prior misdemeanor conviction. 
Secondly, she claims the court erred by admitting extraneous offense evidence and victim impact
testimony about Robert's murder.

Standard of Review


 We review a trial court's evidentiary decisions for an abuse of discretion. Rodriguez v. State,
203 S.W.3d 837, 841 (Tex.Crim.App. 2006). Under this standard, we are required to uphold the
ruling when it is within the zone of reasonable disagreement. We may not reverse a trial court's
decision simply because we disagree with it. See id.

Prior Misdemeanor Conviction


 Appellant complains the trial court erred in admitting State's Exhibit #18, a copy of a
California judgment purportedly reflecting a prior misdemeanor conviction for cruelty to a child by
endangering its health. She argues that the State did not produce a witness to identify her as the
same person identified in the judgment.

 A trial court may admit evidence of a defendant's prior conviction during the punishment
phase of trial. See Tex.Code Crim.Proc.Ann. art. 37.07, § 3(a)(1)(Vernon 2006). The State may
prove a defendant's prior conviction by offering certified copies of the judgment and sentence, along
with independent evidence showing the defendant was the same person named in the previous
convictions. See Beck v. State, 719 S.W.2d 205, 209-10 (Tex.Crim.App. 1986). There are several
ways to prove prior convictions: (1) testimony of a witness who personally knows the defendant and
the fact of her prior conviction; (2) stipulation or judicial admission that the defendant has been so
convicted; (3) introduction of certified copies of judgment, sentence, and record of the Texas
Department of Corrections or a county jail including fingerprints of the accused supported by expert
testimony identifying them with known prints of the defendant; or (4) comparison by the fact finder
of a record of conviction which contains photographs and a detailed physical description of the
named person, with the appearance of the defendant, present in court. Id. These methods are not
exclusive and proof often includes using a combination. Id. at 210. 

 The State proffered the following documents: (1) the misdemeanor complaint listing the
defendant's name, date of birth, and the identity of the defendant's child, Victor Mora; (2) the
misdemeanor advisement of rights, waiver, and plea form; and (3) the municipal court docket sheet
that briefly describes court hearings and the defendant's plea of guilty. The State maintains that the
evidence was sufficient to prove Appellant's prior conviction since her brother testified she had lived
in California prior to 2001 and he believed Victor Mora was one of her children. Thomas testified:

 Q: Now, was Victor Mora one of Cassandra's kids that is living back in California?

 A: I think so.

 Q: Okay.

 A: I'm not sure of all her children's names. 

Dina Rapstine, who worked for Child Protective Services, testified Appellant told her she had
several children, including a child named Victor Mora.

 We conclude that the State failed to provide sufficient independent evidence demonstrating
that Appellant was the same person named in the California misdemeanor conviction. See Beck, 719
S.W.2d at 210. See id., 719 S.W.2d at 210 (the fact the name on the judgment and sentence and in
the pen packet is the same as the defendant is insufficient standing alone to prove a prior conviction). 
Because the trial court erred in admitting the California misdemeanor conviction, we turn now to a
harm analysis. Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998); Scott v. State, 155
S.W.3d 312, 314 (Tex.App.--El Paso 2004, no pet.).

 Erroneous admission of evidence is a non-constitutional error. Scott, 155 S.W.3d at 314. 
A non-constitutional error "that does not affect substantial rights must be disregarded." 
Tex.R.App.P. 44.2(b). When an error had a substantial and injurious effect or influence in
determining the jury's verdict, a substantial right is affected. Scott, 155 S.W.3d at 314. We will not
overturn a criminal conviction for non-constitutional error if, after an examination of the record as
a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. 
Johnson, 967 S.W.2d at 417; Scott 155 S.W.3d at 314-15.

 The record does not establish that the prior conviction had a substantial and injurious effect
on the jury's determination regarding punishment. First, the jury assessed punishment at less than
half of the punishment range available. Appellant received a sentence of forty years for an offense
with a punishment range of five to 99 years. See Tex.Penal Code Ann. §§ 12.32(a), 20.04(c)
(Vernon 2003). Secondly, the misdemeanor conviction was not mentioned during closing
arguments. Finally, the jury heard Appellant's own statement where she expressed culpability for
the crime. "I just wanted to beat him up and drop him off somewhere." We overrule Issue One.

Extraneous Evidence and Victim Impact Statement


 Appellant next maintains that the trial court erred by admitting evidence of Robert's murder
and victim impact testimony. Appellant was neither indicted nor tried for murder. She contends
the evidence was not relevant and served no purpose other than to inflame the jury. The State
counters that Appellant's arguments on appeal differ from her trial objection. 

Preservation of Error


 As a prerequisite to presenting a complaint for appellate review, the record must establish
the complaint was made to the trial court by a timely request, objection, or motion and that the trial
court ruled either expressly or implicitly. See Tex.R.App.P. 33.1 (a)(1) & (2). The complaint made
to the trial court should state the grounds for the ruling the complaining party sought with sufficient
specificity to make the trial court aware of the complaint, unless the specific grounds were apparent
from the context. See Tex.R.App.P. 33.1 (a)(1)(A).

 Before any witness testimony was presented in the punishment phase, defense counsel
argued:

 The other matter, Your Honor, that the State proposes to go into are the facts of the
murder of Robert Fernandez, for which my client is not charged, which has never
been charged. And I don't believe that that is proper evidence at a punishment phase
for a conviction for aggravated kidnapping. It's an unrelated offense. I mean, she
wasn't even indicted for it. The grand jury didn't even return an indictment.


 Based upon the evidence you've heard at this point, she was at home when these two
women left, and there's no evidence that she instructed them or aided them to kill
him or anything of that nature. What happened after they left is -- is pure
speculation, unless they've got Carmen Hernandez [sic] to come in and testify, or
Dolores Rodriguez.


 I mean, putting that evidence in front of the jury, I just think is -- is extremely
prejudicial, not admissible. It's not related to the offense for which she's convicted. 
The jury already knows he was killed.


 [STATE]: Judge, there's no requirement that we indict her for an offense. We can --
We can prove up that she was a party to this murder. We have every right to charge
her with what we want and make a tactical decision to prove that she was a party to
the murder in punishment. 


 That man was dead within a couple of hours, and Maria reported right back to her
that he was dead and that she had killed him. And that her own thigh high stocking
was used. And we're going to show the testimony that she had absolutely no remorse
with regards to his death. In fact, she was bragging about the fact that she was
involved. 


. . .



 THE COURT: Okay. All right. That objection's overruled.


. . .



 [DEFENSE ATTORNEY]: Your Honor, is my objections to the evidence
concerning the homicide preserved without restating it in front of the jury?


 THE COURT: Yes. It was overruled.


During the victim impact testimony, counsel objected:


 [DEFENSE ATTORNEY]: Your Honor if I may, can we approach?


(At the bench.)



 [DEFENSE ATTORNEY]: I don't think the State has proven beyond a reasonable
doubt that my client was involved in the murder of Robert Fernandez. If anything,
they've proved the contrary. The additional portions of that statement that were
introduced by the State, clearly stated that she told the police officers that she did not
want him dead. And I don't know what more evidence that -- I don't think it's
anywhere near close. For that reason, I'm going to renew my objection to going into
the impact of the death of Robert Fernandez. 


 [STATE]: And I -- it's our position that we have put on evidence that she was a
party to a murder. That she in some way aided and abetted through wanting him
killed and then saying, We did it, we killed him.


 THE COURT: Let's try to keep it fairly short. 


 Appellant's complaints were apparent from the context of her objections. Although they did
not directly reference Rules 401 and 403, the nature of the objections was made known to the trial
court.

Extraneous Evidence


 Next, we must determine whether the trial court erred in admitting the extraneous evidence
regarding the murder. Evidence is relevant if it has any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less probable than it would
be without the evidence. See Tex.R.Evid. 401. "[E]vidence may be offered by the state and the
defendant as to any matter the court deems relevant to sentencing, including but not limited to . . .
any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by
evidence to have been committed by the defendant or for which he could be held criminally
responsible, regardless of whether he has previously been charged with or finally convicted of the
crime or act." Tex.Code Crim.Proc.Ann. art. 37.07, § 3 (a)(1).

 For purposes of assessing punishment, a prosecutor may offer evidence of any extraneous
crime or bad act that is shown, beyond a reasonable doubt, either to have been (1) an act committed 
by the defendant or (2) an act for which he could be held criminally responsible. Haley v. State, 173
S.W.3d 510, 514 (Tex.Crim.App. 2005). "Before the jury can consider this evidence in assessing
punishment, it must be satisfied beyond a reasonable doubt that the acts are attributable to the
defendant." Id. at 515. The burden of proof of beyond a reasonable doubt is applied to a defendant's
involvement in the act rather than the elements of a crime necessary for a finding of guilt. Id. 

 Relevance is a question of what is helpful to the jury in deciding the appropriate sentence for
a particular defendant in a particular case and is subject to limitations imposed by Article 37.07, §
3(a). Rodriguez, 203 S.W.3d at 842, citing Miller-El v. State, 782 S.W.2d 892, 894-95
(Tex.Crim.App. 1990). Evidence of "the circumstances of the offense itself or . . . the defendant
himself" will be admissible at the punishment phase. Id. Therefore, the State was not required to
establish Appellant's guilt of the murder prior to introducing such evidence at punishment.

 During the guilt-innocence phase of the trial, the State established Appellant was involved
in or could have been criminally responsible for Robert's death. Thomas Leffew testified that
Appellant asked him to take her, Maria, and Robert camping at Calaveras Lake to protect him from
neighbors who had assaulted Robert. The neighbors were gang affiliated and the youngest son had
pulled a knife on Robert. Robert then pulled a knife, jokingly. When the neighbors heard about this
incident, they attacked Robert while he was at Appellant's house. 

 On their way to the lake, Appellant and Maria stopped off at a convenience store and Thomas
stayed in the car with Robert. Thomas questioned him about the abuse allegations and Robert denied
it. Since there was an entrance fee at Calaveras Lake, the group ultimately decided to go to a friend's
ranch by the river. While Robert was down by the river, Appellant and Maria called Thomas back
to the car. Appellant handed Thomas a knife and told him, "you do him." Thomas was shocked,
begged off the request, and headed back down to the river. When Appellant and Maria persisted,
Thomas began making excuses, such as "we don't have a shovel, we don't have a tent. Let's go to
my house and pick up this -- the equipment to do this right." They left the ranch and dropped off
Thomas back at his house; he wanted to get away from the situation.

 About an hour later, Thomas received a phone call with Appellant, Maria, and Robert
wanting to know if it would be safe to return home. Thomas phoned the neighbors who gave their
word.  When Thomas walked back to Appellant's home, he saw Pablo beating on Robert. Then the
neighbors returned and began hitting Thomas as well. Thomas left and never saw Robert again.

 During the guilt/innocence phase of trial, evidence of Robert's murder was introduced
without objection. Deputy Damiani testified that Maria Hernandez and Dolores Rodriguez were
charged with capital murder. The jury also heard Appellant's statement:

 Maria stayed with Dolores that night at Dolores' house. The next morning I had my
friend, Dino Monk, drive me out to Dolores' house so I could pick up my car. When
I got there, Dino dropped me off. He stayed five or ten minutes at the most. 


 Since I had gotten sick the night before and vomited on myself, and the clothing that
I had been wearing, I ended up leaving the clothes that I had gotten sick on at
Dolores' house. Dolores gave me some clothes to wear on my way home the night
before. I remember asking Maria where my clothes were at. She told me that I had
left them there and they were burned. She said that Dolores and she had both burned
the clothes they had been wearing when they killed Robert.


The remaining portion of her statement was admitted during punishment. Appellant received a
phone call from Maria who told her, "I finished it, girl." Appellant asked what she meant and Maria
replied, "It's done." Appellant then said, "Come on, you mean he's dead?" and Maria responded,
"Yeah, dead."

 According to Appellant, she had a plastic bag and pantyhose in the trunk of her vehicle. In
the phone call, Maria described how she killed Robert. She had tried to smother him with the plastic
bag but he kept fighting her, so she took the pantyhose from the trunk and placed them around
Robert's neck until he stopped breathing. Appellant stated, "I never imagined that Maria would use
those items to kill Robert. In fact, I never imagined that she would kill Robert at all. That's not
what was supposed to happen, I just wanted to beat him up and drop him off somewhere." We find
no error in the admission of the extraneous evidence of the murder since it was relevant and
attributable to Appellant. (2) 

 Appellant next contends that evidence of Robert's murder was unfairly prejudicial. Relevant
evidence may be excluded if its probative value is substantially outweighed by the danger of unfair
prejudice. Tex.R.Evid. 403. A trial court is entitled to broad discretion regarding a Rule 403
objection. State v. Mechler, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). The language of the rule
implies that a determination is inherently discretionary and the trial court is in a superior position
to evaluate the impact of the evidence. Id., citing Montgomery v. State, 810 S.W.2d 372, 378-79
(Tex.Crim.App. 1990). An appellate court, unlike a trial court, "cannot weigh on appeal . . . the
intonation and demeanor of the witnesses preceding the testimony in issue . . . nor can we determine
the emotional reaction of the jury to other pieces of evidence . . . ." Id., citing Montgomery, 810
S.W.2d at 379, citing United States v. Robinson, 560 F.2d 507, 512-16 (2d Cir. 1977).

 In determining whether the probative value of relevant evidence is substantially outweighed
by the danger of unfair prejudice, we consider the following factors: (1) the probative value of the
evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time
needed to develop the evidence; and (4) the proponent's need for the evidence. Mechler, 153 S.W.3d
at 440. However, it is only "unfair" prejudice that provides the basis for exclusion of relevant
evidence. Montgomery, 810 S.W.2d at 389. "Rule 403 favors the admission of relevant evidence
and carries a presumption that relevant evidence will be more probative than prejudicial." Hayes
v. State, 85 S.W.3d 809, 815 (Tex.Crim.App. 2002).

 In her brief, Appellant argues:

 The State had two years in which to seek an indictment for Capital Murder, Murder,
or any other crime it could prove as a result of appellant's actions on July 25, 2004. 
No indictment, other than aggravated kidnaping, was returned by the grand jury. 
Allowing the State to introduce evidence of the murder is not relevant as appellant
was not on trial for his murder and such evidence serves no purpose other than to
inflame the jury. [Texas Rules of Evidence 401, 403].


 Two people were charged with murder. Appellant was not one of them. Appellant
has never been charged or indicted for murder. The State chose not to indict
appellant for murder because there is insufficient evidence to convict appellant of
murder and not for any other reason. Basically, the State was allowed to try
appellant, at the punishment phase, for a murder that they knew could not be proven
beyond a reasonable doubt at guilt/innocence. This is precisely the type of evidence
that Rule 403 addresses. The jury instruction, at punishment, that extraneous
offenses must be proven beyond a reasonable doubt before they can be considered
does not adequately protect the appellant from the misleading and unfair prejudice
caused by the fact that the jury has already heard the evidence.


Appellant's brief lacks any analysis of Rule 403's four factors. She does not discuss how the trial
court abused its discretion regarding (1) the probative value of the evidence; (2) the potential to
impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence;
and (4) the proponent's need for the evidence. Mechler, 153 S.W.3d at 440. As such, she has not
demonstrated that the trial court abused its discretion. See Saenz v. State, 840 S.W.2d 96, 101
(Tex.App.--El Paso 1992, pet. ref'd)("Appellant shoulders the burden to establish how the trial court
abused its discretion in admitting the testimony."). To this extent, Issue Two is overruled.

Victim-Impact Testimony


 Having determined the trial court did not err by admitting evidence of Robert's murder, we
now turn to the victim impact testimony. Victim-impact evidence is the effect that a victim's death
will have on others, particularly the victim's family members. Haley, 173 S.W.3d at 517. Generally,
it is admissible during the punishment phase when the evidence has some bearing on the defendant's
personal responsibility and moral culpability. Id. 

 Robert's father described how his son's death affected him and his family. (3) 

 Q: And, Mr. Fernandez, can you briefly describe for the jury how his death and this
crime has affected you and your family?


 A: I'm sorry. I'm sorry. Well, during Christmastime, real sad. Because see the
empty chair, he was not there, and it's sad.


 And every time we have a family gathering, Robert's name comes up, we talk about
Robert, the way he laughed, the way he smiled. You know we talk about Robert. 
We all miss him.


 And also I work there at Kelly USA, about one mile from Robert's grave. And I go
there every -- every Monday I go down there, water the grass, rake around there. 
He's missed.


 And also, my grandson, Robert's oldest son, Stephen, he calls me about once a
month, I go pick him up. And then he talks like Robert, he smiles like Robert. So
I would have constant reminder of Robert. And that always remind me about him. 


. . .



 Q: And how has Stephen handled the death of his father?


 A: Well, Stephen, I just picked him up Saturday. Like he told me, he had a dream
about his dad and that he want him -- why did it happen and like that. I can't answer
him. I told him I don't know. I don't know. 


 He had dreams about this. About his dad. He's not going to be able to see him
graduate or nothing. 


 Victim impact testimony is irrelevant when it involves the victim of an extraneous offense
who is not named in the indictment. Haley, 173 S.W.3d at 517-19; see Cantu v. State, 939 S.W.2d
627, 637 (Tex.Crim.App. 1997). 

 In Cantu, the defendant was found guilty of the capital murder of Jennifer Ertman. Cantu,
939 S.W.2d at 630-31. Both Jennifer and Elizabeth Pena were brutally raped, beaten, and murdered
during the same criminal episode. Id. at 631. On appeal, Cantu alleged the trial court erred in
admitting victim impact evidence from Pena's mother who testified at the punishment phase
regarding her daughter's good character, the search for her daughter, and the impact her
disappearance and death had on her and on the rest of the family members. Id. at 635-36. The Court
of Criminal Appeals agreed because Pena was not the "victim" for whose death Cantu had been
indicted and tried. Id. at 637. The court also held such evidence was irrelevant under Rule of
Evidence 401:

 The danger of unfair prejudice to a defendant inherent in the introduction of 'victim
impact' evidence with respect to a victim not named in the indictment on which he
is being tried is unacceptably high. The admission of such evidence would open the
door to admission of victim impact evidence arising from any extraneous offense
committed by a defendant. [Emphasis in original.] Id.


 In Haley, the defendant was found guilty of possession of a controlled substance. Id. at 512-13. She was tried with a co-defendant, Kristofer Marsh, who had faced the same indicted offense
and had been convicted of the unrelated murder of Michael Adelman. Id. at 512. During the
punishment phase, the State introduced victim impact testimony from Adelman's mother who
testified about the emotional impact of her son's hospitalization and subsequent death. Id. at 517. 
Relying upon Cantu, the Court of Criminal Appeals held the victim impact testimony was irrelevant
since Haley's indictment did not identify a victim and only charged the offense of possession of
cocaine with intent to deliver. Id. at 518. 

 Here, Robert was named in Appellant's indictment. (4) She was convicted of his aggravating
kidnaping but the victim impact testimony related solely to the impact that the murder had upon
Robert's family. See Grumbles v. State, 2003 WL 22516092 at *9 (Tex.App.--El Paso 2003, pet.
ref'd)(although attempted murder charge of victim was included in the indictment, the jury was
unable to unanimously conclude the defendant was personally and morally culpable for the intended
and foreseeable results of the victim's shooting). The jury did not convict Appellant of Robert's
murder.

 The State responds that the evidence was permissible since it was related to the
circumstances of the offense. In support of this argument, we are directed to Stavinoha v. State. 
There, the defendant, a Catholic priest, pled guilty to aggravated sexual assault of a nine-year-old
parishioner. Stavinoha v. State, 808 S.W.2d 76, 77-78 (Tex.Crim.App. 1991). The State was
permitted to introduce testimony relating to the mental trauma suffered by the victim and the
victim's mother. Id. at 77. The Court of Criminal Appeals held that "victim impact evidence may
be admissible as a circumstance of the offense, even in capital prosecution, so long as that evidence
'has some bearing on the defendant's "personal responsibility and moral guilt"'." Id. at 79, citing
Miller-El v. State, 782 S.W.2d 892, 895-96 (Tex.Crim.App. 1990). The court concluded that a jury
could rationally hold the defendant morally accountable for the psychological trauma to both the
victim and his mother because the evidence had a bearing on his personal responsibility and moral
guilt. Id. 

 This case is distinguishable. In Stavinoha, the victim impact testimony regarding the
psychological consequences related to the specific offense to which the defendant had pled guilty. 
Id. Here, Robert's father's testimony did not relate to the aggravated kidnaping; his testimony was
solely limited to the consequences of the murder. We conclude the trial court abused its discretion
in admitting the victim impact testimony. See Grumbles, 2003 WL 22516092 at *7-9 (victim impact
testimony from victim that was named in indictment for attempted capital murder charge but, where
mistrial had been granted to that charge, was inadmissible).

 We must next determine whether the error was harmful. Generally, evidentiary error does
not rise to a constitutional level. Arzaga v. State, 86 S.W.3d 767, 776 (Tex.App.--El Paso 2002, no
pet.). Any error, defect, irregularity, or variance that does not affect a substantial right must be
disregarded. Tex.R.App.P. 44.2(b). "A substantial right is affected when the error had a substantial
and injurious effect or influence in determining the jury's verdict." Haley, 173 S.W.3d at 518. In
making this assessment, we consider everything in the record, including any testimony or physical
evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the
character of the alleged error and how it might be considered in connection with other evidence in
the case. Id. We may also consider the jury instructions, the State's theory and any defensive
theories, closing arguments, voir dire, and whether the State emphasized the error. Id. at 518-19. 

 We conclude the verdict was substantially affected and influenced by the testimony. Robert's
father was the only witness regarding victim impact. During closing arguments, the State argued:

 Today you heard Cassandra Leffew's brother, who clearly cares about his sister. This
isn't like an adversarial somebody who has an axe to grind with Cassandra Leffew. 
Thomas Leffew took the stand today and said that after all this happened -- do you
remember the statements that Cassandra gave? She didn't want any of this to
happen. She didn't want him to die. Wouldn't somebody that didn't want it to
happen, do you think they'd be hooking up with the person that took his life the very
next morning?


 If that wasn't what she wanted, would she be right back with -- driving around with
Maria over to Thomas' house the next morning? And what did she tell Thomas when
she -- what did Cassandra Leffew tell Thomas when she got out of that car? We did
it. We killed him.


 She's a party to that. And as much as defense counsel says, well, they should just
charge her with it, well, the range of punishment on murder is five to 99, the range
of punishment on aggravated kidnaping is five to 99. We can give justice the justice
it's deserved right here today to Cassandra Leffew for what she did to Robert, what
she caused to have happen. Because let's face it. She's the master mind behind all
this. It all happens but for, but for what Cassandra started in place, Maria and
Dolores never would have killed him because it wasn't Maria and Dolores' beef,
right? Whose beef was it? It was Cassandra's beef. Who said to Thomas earlier in
the day, you're the man, you do it, and gave him the knife.


. . .



 Well, folks, you 12 people are setting the price for crime today in Bexar County, and
it does make a difference. No matter what punishment you set, it won't bring Robert
back to this family. It won't. But when you ask yourself what price do I have to set? 
Here the price, it has to be too high. It has to be too high. So that if anybody -- when
somebody hears in the newspaper or hears in the news what the price was paid, if
they're thinking about doing something like this, they say, no, the price that was set
by this jury is too high. I know the price for this crime, and it's too high for me to
pay. It's too high.


 And you won't be able to bring Robert back, but if one person is getting ready to
commit a crime and decides that the price is too high for him to do it, or her to do it,
and you save one life in the future because you set the price too high today, then it
will be some comfort to this family.


 The State was permitted to introduce evidence of Robert's murder. But it emphasized during
closing arguments that Robert would not be coming back to his family and that if the punishment
were enhanced, it would be of some comfort to his family. Based upon the record, we cannot say
the jury was not influenced by the testimony of Robert's father. We sustain this portion of Issue Two
and reverse and remand for a new punishment hearing.


January 17, 2008 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The summary of facts were taken from Appellant's statement to the police which was admitted during the
guilt-innocence phase of trial. 
2. The court's punishment charge instructed the jury:


 In this case evidence has been admitted to the effect that the defendant may have committed an offense
or offenses other than that for which you have convicted her. The Court instructs you that you may
consider this evidence in determining what sentence is appropriate in the case at hand, but you may
only consider this evidence if you first believe beyond a reasonable doubt that the defendant
committed such other offense or offenses. Further, the evidence may only be used by you to aid you,
if it does, in setting the punishment for the offense for which you have convicted her. 
3. Robert's father's name is Robert Fernandez, Jr. 
4. The indictment read, in relevant part:


COUNT I


PARAGRAPH A



 [D]id then and there intentionally and knowingly abduct another person, namely: ROBERT
FERNANDEZ, by SECRETING AND HOLDING HIM IN A PLACE WHERE HE IS NOT LIKELY
TO BE FOUND WITH INTENT TO INFLICT BODILY INJURY ON ROBERT FERNANDEZ;


PARAGRAPH B





 [D]id then and there intentionally and knowingly abduct another person, namely: ROBERT
FERNANDEZ, by USING AND THREATENING TO USE DEADLY FORCE WITH INTENT TO
INFLICT BODILY INJURY ON ROBERT FERNANDEZ.