

**IN THE COURT OF CRIMINAL APPEALS
OF TEXAS**

NO. PD-1400-06

**TERRY HACKLER, Appellant**

v.

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE SECOND COURT OF APPEALS
COOKE COUNTY**

JOHNSON, J., delivered the opinion of the Court in which PRICE, WOMACK, HOLCOMB AND COCHRAN, JJ., joined. KEASLER, J., filed a concurring opinion in which KELLER, P.J., AND HERVEY AND COCHARN, JJ., joined. MEYERS, J., filed a dissenting opinion.

**O P I N I O N**

Appellant Terry Hackler pled guilty to intoxication manslaughter. A jury assessed punishment at fourteen years' imprisonment and a $5,000 fine.

The victim, Dawn McFarland, was married with two children. During the punishment phase, Dawn's husband, Brad McFarland, testified about how his wife's death had affected him and their children, Colton and Ashleigh. Dawn's mother-in-law, Betty McFarland, also testified in the same respect. During the mother-in-law's testimony, and over appellant's objection, the trial court

admitted state's exhibit 48, a videotape of Ashleigh's 4th birthday party, into evidence. On appeal, appellant complained, *inter alia*, that the videotape was erroneously admitted. The Second Court of Appeals affirmed the conviction. *See Hackler v. State*, 2006 Tex. App. LEXIS 4995 (Tex. App.—Fort Worth 2006). Appellant petitioned for discretionary review, which we granted.

Appellant raises a single ground for review: "The court of appeals erred in affirming the trial court's admission into evidence of a videotape of the 4th birthday party of the deceased's daughter." Appellant argues that affirming the judgment of the trial court was improper because the trial court erred in two ways: overruling appellant's objection to admission of the videotape based on Texas Rules of Evidence 401[1] and 402;[2] and overruling appellant's objection to admission of the videotape based on Texas Rule of Evidence 403.[3] The state responds that the videotape was admissible to assist the jury in determining appropriate punishment. The state also asserts that, although there was other evidence that Dawn McFarland had been a good mother and enjoyed a happy family life, the video depicted the loss that was peculiar to Ashleigh, a permissible consideration at the sentencing phase.

To determine whether a trial court erred in admitting evidence, we review the court's ruling under a standard of abuse of discretion. *Green v. State,* 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996) (citing *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990)). A reviewing

---

[1] "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] "All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible."

[3] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

court should not reverse a trial judge whose ruling was within the "zone of reasonable disagreement." *Montgomery,* 810 S.W.2d at 391.

### The Decision of the Court of Appeals

The court of appeals stated that "[b]ecause three of the four Salazar[4] factors weighed in favor of admitting the video, we conclude that the trial court did not abuse its discretion by admitting the video in this case."[5] *Hackler v. State*, 2006 Tex. App. LEXIS 4995, at \*4-5. It held that: (1) the probative value was high because it provided a "quick glimpse" into Dawn's family life and had some bearing on appellant's personal responsibility; (2) that although the videotape likely evoked sympathy, it did not impress the jury in some irrational, but nevertheless indelible, way; and (3) that the time needed to develop the evidence was slight. *Id.* at \*6. The court did, however, hold that the fourth factor weighed against the videotape's admission; the state presented testimony from at least two witnesses, Dawn's husband and mother, to show that Dawn had been a good mother and enjoyed a happy family life. *Id.* at \*7. Thus the court of appeals concluded that the videotape was cumulative of other evidence and that the state had little need of it.

### Relevance: Rules 401 and 402

Appellant asserts that the videotape has no relevance. The state responds that the videotape "demonstrated a circumstance of the offense or another matter relevant to sentencing" and "would

---

[4] In *Salazar v. State ,* 90 S.W.3d 330 (Tex. Crim. App. 2002)*,* this Court held that the court of appeals erred in holding that a 17-minute video montage of photographs depicting the murder victim's life was admissible as victim-character evidence. We further held that the videotape's probative value was substantially outweighed by unfair prejudice under TEX. R. EVID. 403. We stated that, because the probative value of much of the video montage was low and the potential for unfair prejudice high, those two factors weighed against admissibility. *Id.* at 337.

[5] The court of appeals did not specify whether the videotape was deemed victim-impact or victim-character evidence. Given the nature and content of the videotape, we will make our analysis based on both victim-impact and victim-character evidence.

enable the jury to understand [Dawn's] death in terms of her worth to Ashleigh."

TEX. CODE CRIM. PROC. art. 37.07, § 3(a), states that "evidence at a punishment hearing may be offered as to any matter the court deems relevant to sentencing." "Victim-impact evidence or testimony is generally admissible at the punishment phase when that evidence has some bearing on the defendant's personal responsibility and moral culpability." *Haley v. State*, 173 S.W.3d 510, 517 (Tex. Crim. App. 2005)(citing *Salazar* at 335). *See also Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998)("Both victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence."); *Salazar* at 335(extended holding of *Mosley* as to victim-impact and victim-character evidence to non-capital cases.). The videotape gave the jurors "a quick glimpse into the life of the victim," showed Dawn's uniqueness, and was "a way to inform 'the sentencing authority about the specific harm caused by the crime in question.'" *Salazar* at 335, *quoting Payne v. Tennessee*, 501 U.S. 808, 823 (1991).[6] We conclude, as did the court of appeals, that the video comprised relevant and admissible evidence.[7]

**Unfair Prejudice**: Rule 403

Some six months after the court of appeals issued its opinion in this case, this Court issued its opinion in *Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006), in which we revised

---

[6] *Payne* involved victim-impact and victim-character evidence at the punishment phase of a capital-murder trial. *Payne,* 501 U.S. at 808. The Supreme Court stated that "[a] state may legitimately conclude that evidence about the victim and about the impact the murder had on the victim's family to be relevant to the jury's decision whether or not the death penalty should be imposed." *Id.* at 827. Texas applies this analysis to both capital and non-capital cases. *See Salazar,* 90 S.W.3d 330.

[7] The video could be deemed victim-character evidence as to Dawn's appearances in it. Coupled with the testimony of Betty McFarland, it could also be deemed victim-impact evidence: "And with Ashleigh, that was the only thing that helped her, was to watch a videotape of her last birthday party. And we watched it over and over and over."

the factors to be balanced when considering exclusion of evidence pursuant to Rule 403.

> In summary, a trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. [FN8] Of course, these factors may well blend together in practice.

>> [FN8] In some of our precedents, we stated that a proper Rule 403 analysis included, but was not limited to, four factors: (1) the probative value of the evidence, (2) the potential of the evidence to impress the jury in some irrational yet indelible way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. [Cite omitted] By our decision today, we do no more than refine and build upon our previous analysis, and bring it in line with the plain text of Rule 403.

*Id*. at 641-42.

While victim-impact and -character evidence is relevant to sentencing pursuant to TEXAS CODE OF CRIM. PROC. 37.07, § 3(a), such evidence does not go to make the existence of a fact more or less probable; it is intended to provide the sentencing authority with enough information to assess an appropriate sentence. Its probative value is less clear than issues that are at issue during the guilt phase, and the *Gigliobianco* factors more likely to blur together.

In this case, the brief, 90-second videotape showed to the jurors a normal interaction between Dawn and her family, particularly Ashleigh. The state introduced the videotape through Betty McFarland, Dawn's mother-in-law, rather than Ashleigh. This was reasonable, considering Ashleigh's tender age, and greatly lessened the potential for an irrational response by the jurors. The probative value of the video was increased by the accompanying testimony of Betty McFarland, who described how Dawn's death had impacted her family, particularly Ashleigh. Such evidence is

appropriately part of the basis for the sentencing decision at the punishment phase.

The state's need for the video was low. Without objection, the state introduced other victim-impact and -character evidence through the testimony of family members. Brad McFarland spoke of the effect of Dawn's death on him and their children. Betty McFarland described how Dawn's death affected her and narrated the video tape.[8] The tape itself was but a small portion of the victim-impact and -character evidence.

On the other hand, the videotape was not of a nature that would horrify or repulse jurors, nor would it confuse the jury or distract it from the only issue before it: the appropriate sentence. Neither was the jury unequipped to evaluate its probative value. The video depicted an innocuous, commonplace event–a little girl's birthday party. Although the camera zoomed in for a closeup of Ashleigh's face, which might have evoked some level of sympathy, this does not make the videotape unfairly prejudicial.

We conclude that prejudice, if any, that resulted from the showing of the video did not substantially outweigh the video's probative value.

---

[8] Three family members testified regarding the effect of Dawn McFarland's death, and the state introduced over 40 exhibits in its case-in-chief. Colton and Ashleigh did not testify, but Brad McFarland and Betty McFarland testified as to how both children felt about their mother's death. Among the exhibits introduced by the state was a letter dictated by Ashleigh.

To the drunkman,

> Will you not hit more people. You are going to see me again one day. Please don't hit my uncles aunts and the rest of my family. I feel mad because you killed my mommy. I miss my mommy.

ASHLEIGH

It appears that Ashleigh signed the letter, while someone of a more mature age wrote down her words. (State's exhibit 5.)

**Conclusion**

The court of appeals did not err in affirming the judgment of the trial court.  We overrule appellant's ground for review and affirm the judgment of the court of appeals.

Delivered: February 6, 2008
Do not publish