COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-357-CR

 

 

BRAD BRIDGES                                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 








A jury convicted Appellant Brad Bridges of felony
driving while intoxicated (DWI).  He pled
true to the enhancement paragraph, and the jury assessed his punishment at
sixteen years= confinement.  The trial court sentenced him
accordingly.  In five issues, Appellant
contends that the evidence is legally and factually insufficient to support his
conviction, that the trial court erred by admitting extraneous offense evidence
at punishment, that the trial court erred by allowing improper impeachment of a
witness, and that he was denied his right to a speedy trial.  Because we hold that the evidence is legally
and factually sufficient and that the trial court did not err, we affirm the
trial court=s judgment. 

In his fourth issue, Appellant contends that the
evidence is legally insufficient to support his conviction.  Appellant does not challenge the evidence
elevating the offense to a felony.  A
person commits DWI when he operates a vehicle in a public place while
intoxicated.[2]  Appellant was indicted for committing DWI
with intoxication defined as Anot
having the normal use of mental or physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug, or a combination of
two or more of those substances, or any other substance into the body.@[3]








At around 11 p.m. on September 16, 2006, Officer
Lisa Martin of the Denton Police Department observed a red car make a wide
right turn from Hickory onto Locust, a one-way street with three driving lanes
and parking spaces on each side of the street, crossing over into designated
parking spaces on the left side of the street. 
The red car then moved into the left lane.  Because she believed that making such a wide
turn could be an indication of intoxication, Officer Martin decided to follow
the red car.  Officer Martin testified
that at the Locust and McKinney intersection stoplight, the right lane is a Aright
turn only@ lane, the middle lane is for
traffic going straight only, and the traffic in the left lane can go straight
or turn left.  She also testified that
the road has Aa shoulder area@ to the
left of the left lane, which Ais kind
of a parking area where people park their cars, but it=s wide
open.  It=s like a
large C it
almost C if you=re
there, it looks like this lane is, like huge, is how this lane looks.@  We note that the videotape of the
intersection does not make clear that the far left lane was for parking only at
that particular section of the street, but certainly as the red car proceeded
to that intersection, cars can be seen parked diagonally to the left of the
left lane.  A truck was stopped at the
red light in the left lane.  The red car
stopped behind the truck but then moved without signaling into the shoulder
area to the left of the left lane and stopped with its rear wheels on the Astop@ line of
the intersection.








The red car turned left without signaling onto
McKinney, and after turning, briefly straddled the line dividing two lanes of
westbound traffic.  The red car then
moved into the right lane.  Officer
Martin testified that she saw the red car then twice cross over the lane
divider as the road curved.  The red car
then approached the intersection of McKinney and Carroll.  Traffic can only turn right to go northbound
on Carroll at that intersection; traffic cannot go left, as a concrete barrier
prevents a left turn.  Additionally,
warning signs on McKinney caution that only a right turn is allowed.  Nevertheless, at the stop sign, the red car
stopped in the left lane with its left-turn signal blinking.  At that point, Officer Martin decided to
initiate a stop.

In speaking with the driver, identified at trial
as Appellant, Officer Martin noticed that his eyes were red and glassy, his
speech was very slurred, and there was a strong odor of alcohol coming from him
as he spoke.  She asked Appellant if he
had been drinking, and he responded that he had consumed two, three, or four
eight-ounce draft beers.  Officer Martin
observed a beer in the driver=s side
cup holder.  Appellant told her that it
was his former passenger=s.  Officer Martin testified that when she asked
Appellant to get out of the car, he used the car door to pull himself out and
was unsteady for a moment.  The video
shows that he held on to the open door as he exited the car.

After ascertaining that Appellant had no physical
handicaps, was not taking medication, and did not have epilepsy or diabetes,
Officer Martin conducted an HGN test. 
She testified that she observed all six possible clues of
intoxication.  The defense expert
challenged her administration of the test, but his challenge only pertained to
two of the six clues. 








After the HGN test, Officer Martin attempted to
conduct the walk-and-turn test, but Appellant refused to continue after being
unable to place his feet in a heel-toe position, claiming that he had an ankle
problem.  Appellant, who told the officer
that he had some college education, was unable to successfully count backward
from 56 to 23, and he refused to recite the alphabet from C to W. Officer
Martin arrested Appellant for DWI.

The video shows that Appellant repeatedly talked
or yelled belligerently while he was alone in the squad car, both during the
officers= search
of his car and later when his car was being delivered to the impound lot. At
the jail, Appellant was read the statutory warning, and he refused to give a
blood or breath sample.

Applying the appropriate standard of review,[4]
we hold that the evidence is legally sufficient to support his conviction.  We overrule Appellant=s fourth
issue.








In his fifth issue, Appellant contends that the
evidence is factually insufficient to support his conviction.  Applying the appropriate standard of review,[5]
we hold that the evidence is factually sufficient to support his
conviction.  We overrule Appellant=s fifth
issue.

In his second issue, Appellant contends that the
trial court erred by allowing improper impeachment of a defense witness.  At trial, Appellant relied on Shipman v.
State[6]
in voicing his objections.  But on
appeal, Appellant relies instead on rule of evidence 613.  Because Appellant=s
complaint on appeal does not comport with his complaint at trial, this issue is
not preserved.[7]  We overrule Appellant=s second
issue.

In his third issue, Appellant contends that he
was denied his right to a speedy trial. 
We see no evidence in the record that Appellant ever raised this issue
in the trial court.  Because Appellant
raises this issue for the first time on appeal, it is forfeited.[8]  We overrule Appellant=s third
issue. 








In his first issue, Appellant contends that the
trial court erred by admitting during the punishment phase evidence about the
extraneous offense of unadjudicated bail jumping.  (The record shows that at trial on the DWI,
Appellant had been indicted but not yet tried for bail jumping.)  He contends that there was no evidence of the
required mental state because there was no evidence that he had notice of the
original trial setting for the DWICOctober
17, 2007.  He also contends that State=s
Exhibit 24, a certificate of call, was admitted over his hearsay and
confrontation objections. 

Section 38.10 of the penal code provides that A[a]
person lawfully released from custody, with or without bail, on condition that
he subsequently appear[,] commits an offense if he intentionally or knowingly
fails to appear in accordance with the terms of his release.@[9]








The evidence shows that trial was originally set
for October 17, 2007.  The State=s
investigator testified that Appellant did not appear on that date.  The trial court admitted a certificate of
call, found also in the clerk=s
record, indicating that the bailiff who had signed it had called three times
for Appellant Aat the doors of the Courthouse
of [the trial] Court,@ but he had not answered or
appeared.  Appellant=s
bondsman testified that Appellant checked in regularly from the time the bond
was written until October 16 but not since then and that the bondsman had been
unable to bring Appellant back into the trial court. 

As proof of notice, the trial court admitted a
letter addressed to Appellant informing him of the trial date, a certified copy
of a reset form signed by Appellant and his attorney showing that the case had
been set for jury trial on October 17, 2007, and testimony that Appellant still
lived at the Dallas address to which the court=s trial
setting letter was directed.

The trial court also admitted a certified copy of
the capias issued for Appellant=s arrest
based on his failure to appear on October 17.








The
admissibility of evidence at punishment is guided largely by article 37.07,
section 3 of the Texas Code of Criminal Procedure.[10]  While the trial court makes a threshold
determination of whether the jury could rationally find beyond a reasonable
doubt that an offense or bad act was committed, the jury actually decides if
the State met its burden of proof.[11]  Further, article 37.07, section 3(a) does not
require the State to necessarily prove that the act was a criminal act or that
the defendant committed a crime.[12]  Instead, before the jury can consider the
evidence in assessing punishment, it must believe beyond a reasonable doubt
that the acts are attributable to the defendant.[13]

The
trial court instructed the jury,

You are instructed that if there is testimony before you in this case
regarding the defendant having committed other acts or participated in other
transactions other than the offense alleged against him in the indictment in
this case, that you cannot consider such other acts or transactions, if any,
unless you first find and believe beyond a reasonable doubt that the defendant
committed such acts or participated in such transactions, if any, but if you do
not so believe, or if you have a reasonable doubt thereof, you will not
consider such testimony for any purpose. 


Appellant
has pointed to no evidence in the record that the jury disobeyed this
instruction.  Accordingly, we overrule
Appellant=s first subissue.

Regarding
Appellant=s subissue about the
admissibility of State=s Exhibit 24, we agree with the
State that the Appellant=s entire briefing on this
subissue,

Moreover, State=s Exhibit 24 was admitted
into evidence over the appellant=s objections to right to confront and
hearsay.  (RR 6: 37B38).  See Crawford v. Washington, 541 U.S.
36 (2004)[,]

 








is
inadequate,[14]
but we note in the interest of justice that Appellant did not object to the
testimony about the exhibit.  The State=s
investigator testified that the exhibit is a certified certificate of call;
that a certificate of call is

a document that bailiffs
or other court officers complete after they call the halls three times for a
case, if a defendant is not present. 
Sometimes they'll just do one; sometimes they'll have a stack of 20, and
you'll hear them in the hall of the courthouse call, John Smith, John Smith,
John Smith, and wait for a response[;]

 

that, if
there is no response, A[t]ypically, a warrant is issued
for them, the  individual who failed to
appear@; that
the date on the certificate is October 17, 2007; that the investigator was in
the courtroom on that day; that he knew the bailiff who signed the exhibit;
that the bailiff=s name is Larry Murphree; and
that Murphree is and has been the Anormal@ bailiff
in the trial court for one and a half to two years.  Because the State=s
investigator=s testimony regarding the
exhibit came in without objection, the admission of the exhibit was harmless.[15]  Further, we note that Appellant does not
contend on appeal that the State did not prove his absence from court on
October 17 but instead challenges only the proof of whether such absence was
intentional or knowing.  We overrule the
remainder of Appellant=s first issue.

 

 








Having
overruled Appellant=s five issues, we affirm the
trial court=s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 11, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. ' 49.04(a) (Vernon 2003).





[3]See id. ' 49.01(2)(A).





[4]See Jackson v. Virginia, 443 U.S. 307, 319, 99
S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex.
Crim. App. 2007) (both providing standard for reviewing the legal sufficiency
of the evidence).





[5]See Steadman v. State, 280 S.W.3d 242, 246B47 (Tex. Crim. App.
2009); Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008);
Watson v. State, 204 S.W.3d 404, 414B15, 417 (Tex. Crim. App. 2006); Johnson v.
State, 23 S.W.3d 1, 8B9, 12 (Tex. Crim. App.
2000) (all providing standard for reviewing the factual sufficiency of the
evidence).





[6]604 S.W.2d 182 (Tex.
Crim. App. 1980) (regarding erroneous admission of evidence of prior conviction
as impeachment evidence at guilt phase).





[7]See Pena v. State,
285 S.W.3d 459, 464 (Tex. Crim. App. 2009). 





[8]See Mulder v. State, 707 S.W.2d 908, 915
(Tex. Crim. App. 1986); Berisha v. State, No. 02-02-00417-CR, 2003 WL
22457058,  at *1 (Tex. App.CFort Worth Oct. 30, 2003,
no pet.) (mem. op., not designated for publication).





[9]Tex. Penal Code Ann. ' 38.10 (Vernon
2003).





[10]Haley v. State, 173 S.W.3d 510, 513 (Tex.
Crim. App. 2005); see Tex. Code Crim. Proc. Ann. art. 37.07, ' 3(a)(1) (Vernon Supp.
2009).





[11]Mitchell v. State, 931 S.W.2d 950, 953B54 (Tex. Crim. App.
1996); Nanez v. State, 179 S.W.3d 149, 151B52 (Tex. App.CAmarillo 2005, no pet.). 





[12]Haley, 173 S.W.3d at 515.





[13]Id.





[14]See Tex. R. App. P. 38.1(i); Russeau v. State, 171
S.W.3d 871, 881 (Tex. Crim. App. 2005), cert. denied, 548 U.S. 926
(2006); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Mosley v. State, 983 S.W.2d 249, 256
(Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).





[15]See Leday v. State,
983 S.W.2d 713, 718 (Tex. Crim. App. 1998).