NO. 07-11-0276-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL C

 

AUGUST 12, 2011

 

______________________________

 

 

CHRISTOPHER ALDRIDGE, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM THE 21ST DISTRICT COURT OF BASTROP
COUNTY;

 

NO. 10,874; HONORABLE CHRISTOPHER D. DUGGAN, JUDGE

 

_______________________________

 

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

ABATEMENT AND REMAND

            Following a plea of true
to the State's Motion to Revoke Community Supervision which had been granted to
Appellant, Christopher Aldridge, upon his conviction for aggravated assault causing
serious bodily injury,[1]
the trial court revoked community supervision and sentenced him to five years
confinement and a fine of $1,824.25. 
When the clerk's record was filed on August 9, 2011, it came to this
Court's attention that the Trial Court's
Certification of Defendant's Right of Appeal contained in the clerk's record
is not signed by Appellant as required by Rule 25.2(d) of the Texas Rules of
Appellate Procedure.

Consequently, we abate this appeal and remand this cause to
the trial court for further proceedings. 
Upon remand, the trial court shall utilize whatever means necessary to
secure a proper Trial Court's Certification of Defendant's Right of Appeal in
compliance with Rule 25.2(d).  Once
properly completed and executed, the certification shall be included in a
supplemental clerk's record.  See
Tex. R. App. P. 34.5(a)(12).  The trial court shall cause the supplemental clerk's
record to be filed with the Clerk of this Court by September 26, 2011.  This order constitutes notice to all parties,
pursuant to Rule 37.1 of the Texas Rules of Appellate Procedure, of the
defective certification.  If a supplemental
clerk's record containing a proper certification is not filed in accordance
with this order, this cause will be referred to the Court for dismissal.  See Tex. R. App. P. 25.2(d). 

It is so ordered.

                                                                        Per
Curiam

Do not publish.

 

 











[1]Tex.
Penal Code Ann. § 22.02(a)(1) (West 2011).









 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0382.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0382.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0382.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0382.cr%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-09-0382.cr%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0382.cr%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->








NO. 07-09-00382-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



JANUARY
12, 2011

 



 

ELIAS VEGA, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 137TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2009-422,582; HONORABLE CECIL G. PURYEAR, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Elias Vega, entered an
open plea of guilty to charges of possession of a controlled substance with
intent to deliver an amount of four to 200 grams of cocaine.[1]  A Lubbock County jury assessed a forty-five
year sentence and a $10,000.00 fine as punishment.  He now appeals, contending that the trial
court’s refusal to instruct the jury on the elements of an extraneous crime
caused him egregious harm.  We will affirm.

 

Factual and Procedural History

            The
evidence relating to an extraneous crime or bad act came in the form of
testimony from Lisa Hernandez presented during the punishment phase of
trial.  She testified that, upon her
return to the home she and appellant shared with their infant son in August
2008, she noticed that their son was in great distress and bore an injury on
his hand that appeared to be a burn injury of some variety.  She took the baby to the hospital where the
staff treated him for a second-degree burn.

            The
record contains a great deal of conjecture as to how the baby sustained the
burn injury.  Appellant, at one point,
explained to Hernandez that he fell while holding the baby and that the baby
had suffered a carpet burn to his hand as a result of their fall.  There was also some suggestion that the burn
resulted from scalding water used to wash off the baby’s hand after the
fall.  At any rate, Hernandez was adamant
in her opinion that the injury to their son was an accidental rather than intentional
one.

            Appellant
complains that the trial court should have instructed the jury, as he
requested, on the elements of the extraneous offense.[2]  The jury, instead, was charged as follows
with respect to the evidence of extraneous crimes or bad acts:

You may consider evidence of extraneous crimes or bad acts in assessing
punishment even if the defendant has not yet been charged with or finally
convicted of the crimes or bad acts. 
However, you may consider such evidence only if the extraneous crimes or
bad acts have been shown by the State beyond a reasonable doubt to have been
committed by the defendant or are ones for which the defendant could be held
criminally responsible.

The prosecution does not have to prove extraneous crimes or bad acts
beyond all possible doubt.  The
prosecution’s proof must exclude all ‘reasonable doubt’ concerning the
extraneous crimes or bad acts.

Therefore, if you find and believe beyond a reasonable doubt that the
defendant committed extraneous crimes or bad acts or could be held criminally
responsible for extraneous crimes or bad acts, then you may consider such
evidence in assessing the defendant’s punishment.  However, if you have a reasonable doubt that
the defendant committed extraneous crimes or bad acts or could be held
criminally responsible for extraneous crimes or bad acts, then may not consider
such evidence in assessing punishment.

Standard of Review

            When
presented with a jury charge complaint, we review the charge under Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh’g).  Under Almanza,
we must first determine whether error exists in the charge and, if we find
error, whether such error caused sufficient harm to compel reversal.  See Ngo v State,
175 S.W.3d 738, 743–44 (Tex.Crim.App. 2005).

Analysis

            In
Cate v. State, this Court rejected a
contention similar to appellant’s in the instant
case.  124 S.W.3d 922,
933 (Tex.App.—Amarillo 2004, pet. ref’d).  In Cate, the
appellant unsuccessfully sought a jury instruction on the elements of the extraneous
offenses admitted during punishment, urging that the jury could only assess
whether appellant committed the extraneous offense beyond a reasonable doubt if
it were instructed on the elements of the extraneous offenses.  Id. 
We cited article 37.07, which permits the admission of evidence during
the punishment phase that the trial court deems relevant.  See Tex.
Code Crim. Proc. Ann. art.
37.07, § 3(a)(1) (West Supp. 2010).  We noted that article 37.07 included within
its scope evidence of extraneous crimes and bad acts “shown beyond a reasonable
doubt by evidence to have been committed by the defendant.”  Cate, 124 S.W.3d at 933.  We
rejected Cate’s proposed reading of article 37.07
that would have required that the jury be instructed on the elements of the
extraneous offense.  Id.  Only then, according to Cate,
could the jury determine whether an appellant committed extraneous crimes or
bad acts beyond a reasonable doubt.  Id.  We observed that it is not the jury’s role to
determine whether a criminal or bad act was committed; that role belongs to the
trial court.  Id.  The jury’s duty is to determine whether those
criminal or bad acts were committed by the defendant.  Id. (citing Fields v. State, 1
S.W.3d 687, 688 (Tex.Crim.App. 1999), and Malpica v. State, 108 S.W.3d 374, 377 (Tex.App.—Tyler 2003, no pet.)).  Because the jury does not determine whether
the extraneous offenses or bad acts occurred, there was no need to instruct the
jury on the elements of the offenses.  Id.  In the instant case, appellant takes issue
with our application of article 37.07 in Cate,
contending that such application denies him the statutory right, under article
36.13, to have the jury consider all issues of fact in assessing his
punishment.  See Tex. Code Crim. Proc. Ann. art. 36.13
(West 2007).    

            We
read our application of article 37.07 in Cate
as an application consistent with the Texas Court of Criminal Appeals’s subsequent opinion in Haley v. State, 173
S.W.3d 510 (Tex.Crim.App. 2005).  Haley was convicted by a jury of possession
of a controlled substance.  See id.
at 511.  During
the trial on punishment, the State introduced evidence of Haley’s involvement
in a murder.  Id.  The court reviewed the issue of the
admissibility of evidence of Haley’s participation in the murder and observed
that the intermediate court had concluded that Haley “could only be criminally
responsible for [the] murder if the evidence showed beyond a reasonable doubt
her guilt as a party to that offense.”  Id.
at 512 (citing Haley v. State, 113 S.W.3d 801, 813 (Tex.App.—Austin
2003)).  The intermediate court also had
concluded that the evidence was insufficient to establish that Haley was guilty
of murder under the law of parties and, therefore, the trial court abused its
discretion by admitting evidence of the murder. 
Id. (citing Haley, 113 S.W.3d at 813).  In that same vein, the intermediate court
determined that the trial court erred, and caused egregious harm, by failing to
instruct the jury on the law of parties. 
Id. at 512–13.

            The
Texas Court of Criminal Appeals focused on the admissibility of the evidence
issue as it relates to article 37.07, ultimately holding that, because the
court of appeals had applied an incorrect theory of the law in arriving at the
conclusion that the trial court improperly admitted evidence of the murder, the
analysis need not go any further. 
Nonetheless, the high court’s holdings regarding the admissibility issue
and article 37.07 are instructive to the jury charge issue in the instant
case.  

            The
Texas Court of Criminal Appeals concluded that, “[u]nder
[article 37.07, § 3(a)], it is irrelevant whether the conduct the offering
party is attempting to prove is, or can be characterized, as an offense under
the Texas Penal Code.”  173 S.W.3d at 514–15. 
Further, the court reiterated the distinction we had applied in Cate: 

The statutorily imposed burden of proof beyond a reasonable doubt does
not require the offering party to necessarily prove that the act was a criminal
act or that the defendant committed a crime. 
Before the jury can consider this evidence in assessing punishment, it
must be satisfied beyond a reasonable doubt that the acts are attributable to
the defendant.  We interpret the statute
to require the burden of proof to be applied to a defendant’s involvement in
the act itself, instead of the elements of a crime necessary for a finding of
guilt.

Haley, 173 S.W.3d at 515 (citing Fields,
1 S.W.3d at 688).  The court continued
with a direction to remain mindful of the nature of the punishment hearing when
addressing similar issues:

Unlike the guilt-innocence phase, the question at punishment is not
whether the defendant has committed a crime, but instead what sentence should
be assessed.  Whereas the guilt-innocence
stage requires the jury to find the defendant guilty beyond a reasonable doubt
of each element of the offense, the punishment phase requires the jury only
find that these prior acts are attributable to the defendant beyond a
reasonable doubt.

Id. at 515.

            Indeed,
this Court relied on Haley to conclude that “[w]hen an extraneous bad
act is admitted for consideration during the punishment phase, the jury is not
required to assess whether a statutory crime occurred.”[3]  Hanson v. State, 269
S.W.3d 130, 133 (Tex.App.—Amarillo 2008, no pet.).  Rather, the jury’s “obligation is to
determine, beyond a reasonable doubt, whether that appellant was involved in
the bad act being offered as evidence.”  Id.
at 133–34 (citing Haley, 173 S.W.3d at 514–15).  We then expressly agreed with a sister court
that there was “no need to instruct the jury on the elements of the crime or
crimes arising from the extraneous bad act.” 
Id. at 134 (citing Klock v.
State, 177 S.W.3d 53, 63 (Tex.App.—Houston [1st
Dist.] 2005, pet. ref’d)).

            Based
on the reasoning in Haley, we do not depart from the position we took in
Cate and Hanson that the trial court
need not instruct the jury on elements of extraneous crimes or bad acts
admitted during the trial on punishment. [4]  Accordingly, we overrule appellant’s sole
point of error.

 

 

 

Conclusion

            Having
overruled appellant’s sole point of error, we affirm the judgment of the trial
court.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Do
not publish.








 











[1]
See
Tex. Health & Safety Code Ann.
§ 481.112(a), (d) (West 2010).

 





[2]
Though not entirely clear from his request or
the briefs, there are indications in the record that the parties understood the
extraneous offense on which appellant sought a charge was the offense of injury
to a child.  Further, appellant clarified
at oral argument that the extraneous offense on which he sought an instruction was
injury to a child.





[3]
To the extent appellant has invited us to depart
from Haley’s holdings that “extraneous offenses” and “bad acts” are not
to be treated separately, we respectfully decline.  See Haley, 173 S.W.3d at
514–15; see also Sierra v. State, 157 S.W.3d 52, 60 (Tex.App.—Fort Worth 2004), aff’d, 218 S.W.3d 85 (Tex.Crim.App.
2007) (noting that an intermediate appellate court “is bound by the precedent
of the Texas Court of Criminal Appeals and has no authority to disregard or
overrule” it).

 





[4]Appellant relies on language from our opinion in Nanez:

[T]he trial court is the sole authority on the threshold issue of
admissibility of relevant evidence, while the jury determines whether or not
the burden of proof for the extraneous offenses presented has been
satisfied.  Stated differently, the trial
court is not charged with determining whether the State has proven the
extraneous offenses beyond a reasonable doubt. 
The jury as ‘the exclusive judge of the facts’ is to determine whether
the burden of proof has been met before considering evidence concerning
extraneous offenses and should be so instructed when requested.

Nanez v. State, 179 S.W.3d 149, 151–52 (Tex.App.—Amarillo
2005, no pet.) (citations
omitted).  So, in isolation, this passage
could be read to support appellant’s position. 
However, such isolation ignores the conclusions that followed:

[T]he trial court made a determination outside the presence of the jury
that the extraneous offense evidence was relevant, and the jury was properly
instructed that it could only consider the testimony if it found beyond a
reasonable doubt that appellant committed such acts.

Id. at 152.  In the instant case, as in Nanez, the jury was charged on its duty regarding
the evidence of extraneous crimes or bad acts in a manner consistent with the
principles outlined in Mitchell v. State, 931 S.W.2d 950 (Tex.Crim.App. 1996) (en banc).