

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00220-CR

———————————————————

DUSTY LEE MOSLEY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 16th District Court
Denton County, Texas
Trial Court No. F24-1743-362

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

## I. Introduction

The State charged Appellant Dusty Lee Mosley with theft of a 12-foot dual-axle trailer and some equipment from a storage lot. *See* Tex. Penal Code § 31.03(a). He pleaded not guilty and testified in his own defense. A jury found him guilty, and the trial court assessed his punishment at 10 years' confinement after finding the indictment's enhancement allegations true. *See id.* § 31.03(e)(4)(A) (fixing theft as a state-jail felony if the property value is $2,500 or more but less than $30,000); *see also id.* § 12.425 (enhancing punishment for a state-jail felony conviction to a third-degree felony for habitual offenders).

In a single point, Mosley complains that the trial court abused its discretion by overruling one of his objections. However, Mosley's appellate argument does not comport with his trial objection, which he did not preserve, and on this record, any such error would have been harmless. We overrule Mosley's sole point and affirm the trial court's judgment.

## II. Discussion

To preserve a complaint, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). To be considered timely, the complaint must be made as soon as the ground for complaint is apparent or should be apparent.

2

*Montelongo*, 623 S.W.3d at 822. If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely, and any claim of error is forfeited. *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008).

Further, an objection preserves only the specific ground cited, Tex. R. App. P. 33.1(a)(1)(A); Tex. R. Evid. 103(a)(1)(B); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), and the complaint made on appeal must comport with the complaint made in the trial court; otherwise, the error is forfeited, *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Id.*; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). And an error in the admission of evidence is cured when the same evidence comes in elsewhere without objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Sandone v. State*, 394 S.W.3d 788, 794 (Tex. App.—Fort Worth 2013, no pet.).

Furthermore, we apply Rule of Appellate Procedure 44.2(b) to errors in the admission of evidence. Tex. R. App. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Rule 44.2(b) requires us to disregard any nonconstitutional[1]

---

[1]Mosley argues that the error was constitutional, but the record does not support this argument.

error that does not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

An error does not affect a substantial right if the appellate court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In deciding that question, we consider (1) the alleged error's character and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023). We may also consider jury instructions, theories of the case, and any relevant voir dire. *Id.*

## A. Mosley's appellate argument

In his sole point, Mosley argues, "The trial court erred when it over[ruled his] objection to [a] conclusion by an investigator which was purely speculation and violated the prov[i]nce of the jury."[2] He further argues that it was "prejudicial" to him and

---

[2]An objection that a question "invades the province of the jury" is not a valid objection to opinion testimony in light of Rule of Evidence 704, which states that an opinion "is not objectionable just because it embraces an ultimate issue." *Daniel v. State*,

4

"highly inflammatory," which we interpret as a reference to Rule of Evidence 403. *See* Tex. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). These complaints were not raised or argued in the trial court. *See* Tex. R. App. P. 33.1. We have set out below the alleged error and the remaining proceedings to show the lack of preservation, comportment, and harm.

## B. The alleged error

Mosley sold scrap metal, collected shipping pallets for resale, and "flipped" items from garage sales on Facebook Marketplace. Roanoke Police Detective Conner Branham testified that when he learned that Mosley was involved in "flipping" things and selling scrap metal, he used LeadsOnline, a system used by companies like pawn shops to avoid purchasing stolen items, to find Mosley's September 2023 sales transactions because the theft had occurred on or around September 8, 2023.

For that period, LeadsOnline showed only one transaction: on September 10, 2023, Mosley sold aluminum, copper, and tin at a metal-recycling scrap yard. The database provided the detective with the sale receipt, which showed Mosley's name, date of birth, driver's license number, and the make, model, license plate number, and

No. 02-18-00041-CR, 2019 WL 3334422, at *7 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op., not designated for publication) (citing Tex. R. Evid. 704)).

color of his truck; it also provided photos of Mosley and his truck at the scrap yard that day with no trailer attached to his truck. These items were admitted into evidence without objection.

Detective Branham testified that Mosley told him that he had purchased the trailer because he needed it to pick up "a lot of heavy equipment . . . half a water tower and part of an 18-wheeler bed." The following colloquy of which Mosley complains then occurred:

> Q. And when you ran him through Leads, the only report that was generated was this one on September 10th?
>
> A. Correct.
>
> Q. Where he did not use a trailer?
>
> A. Correct.
>
> Q. What did that indicate to you?
>
> A. It indicated to me that over those two days, he didn't use the trailer to take the materials that he originally stated he needed to scrap.
>
> Q. So did this help you prove or disprove the Defendant's story?
>
> A. It helped me disprove the Defendant's story.
>
> [Defense counsel]: *Objection, conclusion*, Your Honor.
>
> THE COURT: Overruled.

[Emphasis added.]

6

During cross-examination, Detective Branham disagreed with Mosley's counsel that the LeadsOnline information had no bearing on the case. On redirect examination, the detective testified as follows:

> Q. Now, at the very end of your cross-examination, [defense counsel] asked you about the Leads record that you pulled from 9/10 of 2023. Do you remember that?
>
> A. I do.
>
> Q. And [defense counsel] stated it had no bearing on this case, and you disagreed with that?
>
> A. I did.
>
> Q. Can you explain why?
>
> A. We spoke about earlier if you're using [the trailer] for two days, and there's only one ticket going to a scrap yard to supposedly scrap half of a water tower and part of an 18-wheeler truck bed, it would show me more than the truck bed of the pickup to take that equipment in order to off-load it.
>
> Q. So did that Leads ticket make the Defendant's story more or less believable?
>
> A. Less believable.

Mosley did not object to this testimony.

As set out above, because Mosley's objection was not to speculation or unfair prejudice, his appellate argument does not comport with his trial complaint. *See Clark*, 365 S.W.3d at 339. Further, he gave no explanation to justify his delay in objecting until after the detective answered the question, *see Luna*, 268 S.W.3d at 604, and he did not object to related testimony, *see Valle*, 109 S.W.3d at 509. Thus, his complaint was not

preserved. *See* Tex. R. App. P. 33.1. We have nonetheless set out the remaining evidence to show that if an error had been preserved, it would have been harmless.

## C. Other evidence

Bryan Lane, the trailer's owner, testified that he had affixed an Apple AirTag[3] to the trailer. When he noticed the trailer was missing, he used his iPhone to track the trailer using the AirTag and led the police to it.

Osiel Guevara testified that he bought the trailer—unaware of its ill-gotten status—from Mosley for $1,000. Mosley had posted the trailer for sale on Facebook Marketplace, and Guevara gave police screenshots of their transaction and the bill of sale upon which Mosley had listed his home address and included a copy of his driver's license; this evidence was admitted without objection.

Guevara testified that twenty minutes after his transaction with Mosley, Lane showed up, claiming the trailer's ownership. When Guevara learned the trailer was stolen property, he called Mosley and told him that the police would be contacting him. When he told Mosley that the trailer was stolen, Mosley told him that "he was willing to talk to [the police] because he did have that title, that he just needed to look for it," and that it had been his grandfather's trailer.

---

[3] *See* Caitlin McGarry, *Apple AirTags Are the Best Luggage Trackers*, N.Y. Times: Wirecutter (Nov. 20, 2023), https://www.nytimes.com/wirecutter/blog/best-luggage-tracker-apple-airtag (last visited May 21, 2026) ("[W]hen AirTags are used for their intended purpose, they are the most effective way to find your lost stuff.").

Detective Branham conversed with Mosley by phone a few days after the theft. During the conversation, which had been recorded and which was admitted without objection and published to the jury, Mosley told Detective Branham that he had paid $1,100 for the trailer so that he could haul some heavy equipment and that he had sold it two days later on Facebook Marketplace. Location data from Mosley's cell phone showed that during the relevant time period, his phone had traveled near the theft site.

Mosley gave the detective a bill of sale that included a photocopy of the driver's license of Zachary Bills, the person he claimed had sold the trailer to him. That driver's license had expired in 2019. Bills testified that he did not sell a trailer to anyone, that he had never met Mosley, and that his expired license had been sold with the rest of his belongings in a storage-unit auction. The storage unit was located near where Mosley had sold the trailer to Guevara.

During the defense's case, Mosley denied that he had stolen the trailer and testified that he had not known it was stolen when he flipped it to Guevara for $100 less than he had paid for it two days after he acquired it. He stated that the Zachary Bills who testified did not look familiar to him and that he had purchased the trailer from someone using Bills's expired driver's license. He stated that he had acquired the trailer to move a water tower and a piece of an 18-wheeler bed to his house to cut up for scrap. Because Mosley elected to testify, his criminal history—including six prior convictions for trailer thefts—was presented to the jury. Mosley also testified that he

9

had pleaded guilty to the theft of money acquired from his sale of the stolen trailer to Guevara.

**D. Voir dire, theories of the case, and jury instructions**

During voir dire, the prosecutor explained that it was the jury's job to determine witness credibility, from which they could "believe all, none, or some of what they say." *See Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020) (explaining the jury's province and that it may draw reasonable inferences from the evidence so long as trial evidence supports each inference). The defense explained circumstantial and direct evidence and the range of evidentiary burdens from "reasonable suspicion" to "beyond a reasonable doubt."

During opening statements, the prosecutor set out what the State anticipated the evidence would show, listing the AirTag, cell-phone location records, sales transaction records, other witness testimony, and Mosley's changing stories. Defense counsel warned the jury that Mosley had a "checkered past" with multiple theft convictions but that he had pleaded guilty to those offenses—not to this one—and that Mosley would "get up and testify to what happened, what didn't happen." He stated that there was no question that the trailer was stolen, "just who did it," and that while Mosley "hasn't been entirely honest his whole life," the trial's purpose was to determine whether he was guilty of this offense, and "not everything else he's done in his life."

During closing arguments, the prosecutor argued that because most of the evidence was uncontested, the issues were who had the motivation to lie and whether

Mosley had stolen the trailer or had purchased the trailer from someone with the expired driver's license. The prosecutor referred to the LeadsOnline evidence that did not show the trailer at the scrap metal yard despite Mosley's contention that he had purchased it to move heavy scrap items and also argued that no one would sell an almost-new trailer for $100 less than he paid for it when "the way he supports [his] family . . . is [by] flipping things" via resale.

Defense counsel challenged the investigation's thoroughness, asserted that Mosley had been a victim, and argued, "It was somebody that apparently, through the Internet, the dark web, whatever, was able to get ahold of an expired driver's license and used it to impersonate the person that was originally the person on that driver's license." He pointed out that Mosley had given Guevara a copy of his own driver's license with the bill of sale.

In rebuttal, the prosecutor responded, "[Y]ou do not have to be a criminal mastermind to commit a crime," and argued that Mosley had not known about the AirTag and had used his real driver's license "because he thought there's no way he would get caught." The prosecutor also pointed out that Mosley's "checkered" past included nine theft convictions—six involving trailers—showing knowledge and intent, not accident or mistake. The prosecutor concluded by asking why anyone would buy a trailer for temporary use rather than rent one.

Among other things, the jury charge defined statutory terms and reminded the jury that any statements of counsel during trial or argument were not evidence.

11

**E. Analysis**

As set out above, there was nothing in the evidence, the jury instructions, the theories of the case, or voir dire that would have affected any of Mosley's substantial rights, either in general or as it related to the alleged error during the detective's LeadsOnline testimony. That is, the jury had evidence beyond a reasonable doubt to convict Mosley of the theft based on the other evidence—including Mosley's own testimony—and thus the alleged error could have had no "substantial or injurious effect or influence" in determining the verdict. *See Haley*, 173 S.W.3d at 518; *see also King*, 953 S.W.2d at 271. We overrule Mosley's sole point.

## III. Conclusion

Having overruled Mosley's sole point, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 28, 2026

12